UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LINDA J. SHENKO,

                                            Plaintiff,

                                                                    6:14-CV-01595
v.                                                                  (LEK/TWD)

FEDERAL BUREAU OF INVESTIGATION,
HOMELAND SECURITY, JOHN AND JANE
DOES, TOWN OF NEW HARTFORD,
NEW HARTFORD POLICE DEP'T,
OFFICER FREIBERGER,

                                            Defendants.
_____

APPEARANCES:

LINDA J. SHENKO
Plaintiff *pro se*
27 Buttonwood Circle
Clinton, New York 13323


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

        This matter is before the undersigned for initial review of the Second Amended

Complaint.  (Dkt. No. 34.)  *Pro se* Plaintiff Linda J. Shenko commenced this action pursuant to

42 U.S.C. § 1983, alleging violations of her civil rights under the First, Fourth, Fifth, and

Fourteenth Amendments.  For the reasons discussed below, the Court recommends dismissing

Plaintiff's Second Amended Complaint (Dkt. No. 34) in its entirety without leave to amend for

failure to state a claim pursuant to 28 U.S.C. § 1915(e).  The Court further recommends that the

District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

# I.    PROCEDURAL HISTORY

Plaintiff filed her original Complaint on December 31, 2014.  (Dkt. No. 1.)  Plaintiff filed an Amended Complaint on January 30, 2015, naming the Federal Bureau of Investigation ("FBI"), Homeland Security, John and Jane Does, the Town of New Hartford, the New Hartford Police Department, and Officer Freiberger as Defendants.  (Dkt. No. 5.)  On April 17, 2015, this Court granted Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) and recommended dismissal of the Amended Complaint (Dkt. No. 5) with leave to amend the claims against the FBI, Homeland Security, the Town of New Hartford, and Officer Freiberger, and without leave to amend the claims against the New Hartford Police Department.  (Dkt. No. 6.)  Plaintiff requested and received several extensions of time to file objections to the Court's Report-Recommendation.  (Dkt. Nos. 7, 8, 15, and 16.)  On June 18, 2015, the Report-Recommendation was approved and adopted in its entirety.  (Dkt. No. 20.)

Thereafter, Plaintiff requested and received several extensions of time to file a Second Amended Complaint.  (Dkt. Nos. 21, 22, 23, and 25.)  On September 28, 2015, this Court ordered Plaintiff to file her Second Amended Complaint by January 15, 2016.  (Dkt. No. 25.)  On January 15, 2016, Plaintiff filed her Second Amended Complaint.  (Dkt. No. 31.)  By letter dated January 16, 2016, Plaintiff informed the Court that she had filed a "few pages" of the Second Amended Complaint "just to let [the Court] know it's in filing shape – almost."  (Dkt. No. 32.)  On January 20, 2016, Plaintiff filed a 121 page Second Amended Complaint.  (Dkt. No. 34.)

On January 25, 2016, and February 4, 2016, Plaintiff filed letter motions requesting certain changes to her Second Amended Complaint.  (Dkt. Nos. 35 and 36.)  This Court granted Plaintiff's February 4, 2016, letter motion (Dkt. No. 36) insofar as it sought to change the name of Defendant "Fontaine" to "Francone" and denied all other requests.  (Dkt. No. 37.)  On

February 16, 2016, the Court denied Plaintiff's request for appointment of counsel (Dkt. No. 38) without prejudice.  (Dkt. No. 39.)  In deference to Plaintiff's *pro se* status, the Second Amended Complaint filed January 20, 2016 (Dkt. No. 34), is the operative complaint in this action, which is now before the Court for initial review.[1]

## II.    ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff's previously dismissed Amended Complaint alleged that on June 22, 2012, Plaintiff's car was "lasered/tasered" in her driveway, which "blasted out" the window and caused trunk damage.  (Dkt. No. 5 at 2.)  Plaintiff alleged that her wrist was "lasered/tasered" in twenty places while she was taking pictures in her garage of the window and trunk damage.  *Id*. Thereafter, records went "mysteriously missing" from her doctor's computer.  *Id.*

Plaintiff further alleged that in September 2014, the man who mows her lawn told her, "The reason they are not paying you is because they are going to live longer than you are."  (Dkt. No. 5 at 2, emphasis omitted.)  Plaintiff was "shocked at this brazen attempt of YOUR OPERATIVES to FURTHER intimidate a 71 year old VICTIM who now has a 50% disability in her right wrist, and a broken down 2007 Chevy in her garage."  *Id*. at 3 (emphasis in original). Later, a lawyer also told her, "[t]he reason they are not paying you is because they are going to live longer than you are."  *Id*. (emphasis omitted).  Plaintiff alleged that the assistant branch manager of an M&T Bank conveyed a similar message.  *Id.* at 4.

Plaintiff alleged that her credit cards and documents were stolen three times.  (Dkt. No. 5 at 4.)  Plaintiff alleged that the government spent sixty-five million dollars to follow her as she delivered newspapers.  *Id.*  Plaintiff had to quit her job at Meals on Wheels in order to pursue her

---

[1]  The Court has also reviewed the "few pages" of Plaintiff's Second Amended Complaint filed on January 15, 2016 (Dkt. No. 31), which does not cure any of the defects of Plaintiff's Amended Complaint (Dkt. No. 5) or Second Amended Complaint (Dkt. No. 34).

claims against the government. *Id.* at 5. Plaintiff further alleged that operatives of the Court have "found it necessary to delete sentences, [and] rewrite sentences to make sure [that] they were meaningless in an effort to discredit me." *Id*. at 1 (emphasis omitted).

## III. ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of her civil rights under the First, Fourth, Fifth, and Fourteenth Amendments. (Dkt. No. 34.) Plaintiff states that "*Bivens*" and 18 U.S.C. § 241 are also "applicable." *Id*. Plaintiff also asserts numerous other claims arising under New York State law, including (but not limited to), negligence, deliberate indifference, retaliation, conspiracy, obstruction of justice, victim intimidation, tampering with evidence, theft of evidence, theft of property, falsifying documents, fraudulent concealment, failure to supervise and train, assault, battery, elder abuse, witness intimidation, breaking and entering, intentional infliction of emotional distress, false imprisonment, attempted arson, and failure to investigate. *Id*. Plaintiff seeks significant monetary damages. *Id*.

Plaintiff again names the FBI, Homeland Security, John and Jane Does, the Town of New Hartford, and Officer Freiberger as Defendants. *Id*. at 2, 15.[2] Plaintiff also "adds" the United States of America, the Department of Justice ("DOJ"), Officer Spinella, Investigator Sica, Officer Livingston, Sargeant[sic] Francone,[3] Police Chief Inserra, Spina, the Johnson household, Gates Cole Insurance (Broker), SAFECO INS., Officer Bragg (FBI-Syracuse), Mr. Hubey (FBI-Syracuse), and Mr. Vale (FBI-Albany) as Defendants. *Id*. at 4-8.

---

[2] Page references identified by docket number are to the numbers assigned by the Court's CM/ECF electronic docketing system.

[3] This Court granted Plaintiff's letter motion (Dkt. No. 36) requesting to change the name "Fontaine" to "Francone" and denied all other requests. (Dkt. No. 37.)

Plaintiff has resided in the Town of New Hartford since August 31, 2010. (Dkt. No. 34 at 8.) She alleges that she has been a "target of the FBI" since approximately 2002, and has been under "24/7 surveillance since 2002." *Id.* at 8-9.[4] Sometime between 2008 and 2009, the FBI accessed her computer and "went into" certain websites, in violation of her Fourth Amendment rights. *Id.* at 9. Plaintiff alleges that the FBI continues this "scam" against her. *Id.*

In the last three years, the FBI and the "main actors" have retaliated against Plaintiff by (1) "lasering" out the back window of her car, (2) "lasering and tasering" her right wrist and breaking it in twenty places; and (3) "laser[ing]" a ¼ inch hole in her face after she began "FOILING" requests about the responsibilities of the New Hartford Police. *Id.* at 9, 14, 31. "They" have also "lasered," *inter alia*, Plaintiff's bedroom window, venetian blinds, brake pads, boots, tires, lightbulbs, backyard water features, electric massagers, vacuum cleaners, clothing, eye glasses, household plants, concrete landscaping, electric blankets, dishes, and tin pie plates. *Id.* at 30, 39, 59, 65-118. The "alleged career criminals" have pulled the wiring on her furnace, tampered with smoke/carbon monoxide detectors and fire extinguisher, started a fire in her Jenn-

---

[4] Plaintiff states that in 2002, a "securities client filed a complaint about a possible misappropriation of his pension funds." (Dkt. No. 34 at 8.) Plaintiff states that the client's money was in her checking account, and that she "used it" while "awaiting relicensing from an employee securities agent status to an independent securities broker status." *Id.* The Court takes judicial notice that on October 30, 2002, a two-count Indictment was filed, charging Plaintiff with (1) violation of Title 18, United States Code, Section 664 – Theft or Embezzlement from Employee Benefit Plan, and (2) Title 18, United States Code, Section 1027 – False Statements/Concealment of Facts Required by ERISA. *See* Certificate of conviction, *United States v. Linda J. Shenko*, 5:02-CR-00422 (HGM) (N.D.N.Y. Nov. 27, 2009), ECF No. 34. Plaintiff pleaded guilty to Count 2 of the Indictment. *Id.* On May 5, 2004, Plaintiff was sentenced to a term of imprisonment of 10 months, followed by a 3-year term of supervised release with conditions. *Id.* Restitution in the amount of $29,091.36 was ordered. *Id.* Plaintiff's supervised release expired on March 1, 2008, and the restitution obligation was satisfied by the Release of Lien filed in the office of the Oneida County Clerk on June 23, 2009. *Id.*

Air grill, destroyed her home office equipment, and tampered with her dryer, outside doors, and rain gutters. *Id.*

Plaintiff alleges that Defendants Freiberger, Spinella, Sica, Livingston, and Francone, all alleged to be members of the New Hartford Police Department, have failed to investigate numerous complaints and criminal activity, are "working damage control" for the FBI, and have engaged in retaliatory conduct by, *inter alia*, issuing false traffic tickets and reports. *Id.* at 29-30. Construing Plaintiff's Second Amended Complaint liberally, Plaintiff brings a supervisory liability claim against Police Chief Inserra. *Id.* at 4.

Plaintiff made several verbal and written "pleas" to Agent Bragg, Mr. Hubey, and Mr. Vale, all alleged to be employees of the FBI, "to intercede and put an end to the allegedly criminal activities against [her]." *Id.* at 8. Plaintiff alleges that Agent Bragg, Mr. Hubey, and Mr. Vale failed to investigate, and failed to supervise and train "their people." *Id.* at 8, 60. Plaintiff also alleges that Defendant Spina is an "operative of the FBI et al." and "falsely" impersonated a New Hartford police officer while assisting Officer Spinella. *Id.* at 4-5.

Plaintiff alleges that Gates Cole Insurance (Broker) was negligent in paying false claims and "promoted insurance fraud" and cancelled her insurance "for too many claims." *Id.* at 6-7. Plaintiff alleges SAFECO INS. was also negligent, "promoted insurance fraud," and displayed a deliberate indifference, by failing to respond to her pleas for help and also for putting her "on ignore." *Id.*

Plaintiff alleges that John and Jane Does, the "main actors" in this action, work out of their houses and vehicles "for the purpose of the laser/taser activities." *Id.* at 7. They all reside or work out of the following addresses: (1) Buttonwood Circle ## 16, 18, 19, 20, 21, 22, 23, 24,

25, 26, and 29; (2) Dogwood Lane ## 2 and 4; (3) Cherrywood Boulevard ## 15, 16, and 18; and (4) Overland Drive ## 4, 5, 6, 7, 8, and 20. *Id*. at 7, 121.

Plaintiff also alleges "the sexual gang laser rape instituted" by bad actors operating out of Buttonwood Circle ## 18, 19, 24 and 26 started on August 25, 2015, "and it has not stopped since." *Id*. at 3. Plaintiff states that she "screamed out on the street and yelled out their house numbers." *Id*.

Plaintiff further alleges that the Johnson household, of 19 Buttonwood Circle, is "one of the major actors in this action." *Id*. at 5. Plaintiff states that she can:

> name homeowners, **HOWEVER**: it is law enforcement's job to investigate criminal activity, especially if there is an indication that the alleged FBI personnel are involved. I have certainly begged for the **<u>REAL FBI</u>** to come here and investigate for three years now. It should not take them very long to identify the alleged criminals in "straight line" laser activity.

*Id*. at 30 (emphasis in original). Plaintiff alleges that she "has [five] years of documented laser/taser hits against her personally, her property and her loving ten pound dog, Furball." *Id*. at 31.

Plaintiff alleges that because of "their" actions, her constitutional rights of liberty, the pursuit of happiness, and the right to property have been destroyed. *Id*. at 9. Plaintiff further avers that her freedom of speech and right to privacy have been violated. *Id*. Finally, Plaintiff alleges violations of due process and the right to be safe and secure in her home. *Id*. at 22, 120.

## IV.    LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to

state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation."  *Id*.

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable

inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.     ANALYSIS

### A.     Claims Against the United States of America, DOJ, FBI, and Homeland Security

It is well settled that the United States of America and its federal agencies are immune from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005). Federal agencies must waive immunity before being subject to suit. *Meyer*, 510 U.S. at 475. The Federal Tort Claims Act ("FTCA") provides a waiver of immunity and thus affords the sole remedy for personal injuries arising or resulting from the negligent or wrongful act or omission of any employee or agency of the federal government acting in the scope of employment. 28 U.S.C. §§ 1346(b)(1), 2679(b)(1). The FTCA requires, as a jurisdictional prerequisite to suit, that a plaintiff exhaust administrative remedies with the appropriate federal agency before filing suit. 28 U.S.C. § 2675(a). Here, Plaintiff does not allege that she exhausted

her administrative remedies. (Dkt. No. 34.) Because Plaintiff's Second Amended Complaint (Dkt. No. 34) does not cure the defects of the Amended Complaint (Dkt. No. 5), the Court recommends dismissal of the claims against the United States of America, the DOJ, the FBI, and Homeland Security without leave to amend.

**B.**     **Claims Against Officer Bragg, Mr. Hubey, Mr. Vale, and Spina**

Plaintiff has sued Officer Bragg, Mr. Hubey, Mr. Vale, and Spina individually and as "instrumentalities of the FBI et al." (Dkt. No. 34 at 8.) "Because an action against a federal agency [like the FBI] or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (citing *Federal Reserve Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994)); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (an official capacity suit is treated as a suit against the governmental entity for immunity purposes). The United States "has not waived the government's sovereign immunity . . . from lawsuits based on constitutional claims," *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999), leaving an award of monetary damages against Officer Bragg, Mr. Hubey, Mr. Vale, and Spina in their individual capacities, as the only relief potentially available to Plaintiff. *See Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007).

In *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, the Supreme Court recognized the existence of a cognizable claim for money damages for constitutional violations committed by federal agents acting under color of federal law. 403 U.S. 388 (1971); *see also See Carlson v. Green*, 446 U.S. 14, 18 (1980) ("*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."). A plaintiff bringing a

claim under *Bivens* is required to "allege that he has been deprived of a constitutional right by a federal agent acting under color of federal authority." *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) (citing *Bivens*, 403 U.S. at 389). The doctrine of respondeat superior does not apply in *Bivens* actions. *Iqbal*, 556 U.S. at 676. Therefore, to be liable, a *Bivens* defendant must have been "personally involved in the claimed constitutional violation." *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009).

Personal involvement by a supervisory defendant may be established on a *Bivens* claim by evidence that the defendant: (1) directly participated in the constitutional violation; (2) failed to remedy the violation after learning of it through a report or an appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the violation; or (5) failed to act on information indicating the unconstitutional acts were occurring. *Thomas v. Ashcroft*, 470 F.3d 491, 497 (2d Cir. 2006) (citing *Wright v. Smith*, 21 F.3d 496, 501 (1994)).

Here, Plaintiff does not allege that Officer Bragg, Mr. Hubey, Mr. Vale, and Spina directly participated in any of the alleged constitutional violations. Rather, with respect to Officer Bragg, Mr. Hubey, and Mr. Vale, Plaintiff states that:

> Pleas were made to each of these individual to intercede and put an end to the allegedly criminal activities against me. The theft of documents, the destruction of property, and assault and battery. No one did a thing to help me.

*Id*. at 8. Plaintiff alleges Officer Bragg, Mr. Hubey, and Mr. Vale failed to supervise and train "their people." *Id*. Plaintiff took a "personal trip" to see Mr. Hubey in Syracuse, New York, asking for help. *Id*. at 60. However, Mr. Hubey, "showed [Plaintiff] the door." *Id*. Plaintiff alleges that "if in fact [Mr. Hubey] supervised his people we would not be here today with this multi-million dollar lawsuit." *Id*. Plaintiff also claims that she sent "several certified/Fedex"

packages to the FBI in Albany, New York, "asking for help with stolen research . . . and never heard a response back." *Id.* Plaintiff further alleges that she "called Agent Bragg from Syracuse FBI regarding thousands of pages of stolen documents, [and] sent him a certified letter." *Id.* Plaintiff further alleges that she "never heard a word from Agent Bragg or his superiors." *Id.* Finally, Plaintiff alleges that Spina is an "operative of the FBI" and is "working damage control" by "impersonating a New Hartford cop." *Id.* at 40.

Plaintiff has failed to plead plausible facts sufficient to state a *Bivens* claim against Officer Bragg, Mr. Hubey, Mr. Vale, or Spina. Because Plaintiff has already been given the opportunity to amend her complaint once (Dkt. No. 6), the Court recommends dismissal of the claims against Officer Bragg, Mr. Hubey, Mr. Vale, and Spina without leave to amend.

###    C.    Claims Against the Town of New Hartford

"To establish liability under 42 U.S.C. § 1983 against a municipality . . . , a plaintiff must show that the claimed constitutional violation resulted from a municipal custom or policy." *Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 139 (N.D.N.Y. 2006). An "official policy or custom" can be shown in several ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees. *Dorsett-Felicelli, Inc. v. Cnty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S 658, 690-91 (1978)). "Custom denotes persistent and widespread practices, and thus proof of a single

incident of unconstitutional activity is not sufficient to impose liability under *Monell* . . . ." *Ahern*, 411 F. Supp. 2d at 139 (punctuation and citation omitted).

Here, as was the case with the Amended Complaint (Dkt. No. 5), the Second Amended Complaint does not allege any facts plausibly suggesting an official policy or custom that caused Plaintiff to be subjected to the denial of her constitutional rights. (Dkt. No. 34.) Therefore, the Court recommends dismissal of the claims against the Town of New Harford without leave to amend.

> **D.** **Claims Against Officer Freiberger, Officer Spinella, Investigator Sica, Officer Livingston, and Sargeant[sic] Francone**

To state a claim under § 1983, a plaintiff must allege that: "(1) the conduct complained of [was] committed by a person acting under color of state law; and (2) "the conduct complained of . . . deprived [the plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). The purpose of § 1983 is to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Here, Plaintiff's Second Amended Complaint does not contain plausible factual allegations that Freiberger, Spinella, Sica, Livingston, or Francone were personally involved in

any of the events of which she complains, i.e., the "lasering/tasering." Instead Plaintiff seeks to hold these individual officers of the New Hartford Police Department liable for, *inter alia*, failing to investigate the laser/taser incidents, writing false reports, issuing false traffic tickets, and working the FBI's "damage control." (Dkt. No. 34 at 25-57.) The mere failure to investigate an allegation of unconstitutional activity, without more, however, does not provide a basis for finding liability under § 1983. *Wingate v. Horn*, No. 05 Civ. 2001 (LTS/HBP), 2007 WL 30100, at *6, 2007 U.S. Dist. LEXIS 203, at *19-20 (S.D.N.Y. Jan. 4, 2007).[5] Moreover, "there simply is no constitutional right to press criminal charges against another individual." *Sipe v. Harder*, No. 9:08-CV-1365 (FJS/ATB), 2010 WL 3418382, at *12, 2010 U.S. Dist. LEXIS 88416, at *39 (N.D.N.Y. Aug. 4, 2010).

Plaintiff alleges that Officer Freiberger "failed to investigate and was allegedly prevalent in the cover up of the FBI . . . working out of the Cherrywood community causing the felionous[sic] damage to my wrist." *Id*. at 22. Plaintiff also alleges that the "deliberate indifference in the way he wrote his report emboldened the alleged career criminals to continue their alleged criminal activities against me." *Id*. at 25. Finally, Plaintiff requests that the Court "mark" Freiberger as "a hostile witness who knows who destroyed my right wrist . . . ." *Id*. at 29.

On March 1, 2013, Plaintiff called 911 about "laser/taser" damage to the Jeep that occurred at Oxford Town Court by John and Jane Doe. *Id*. at 40. Despite reporting this loss, Plaintiff "never heard another word" from Spinella. *Id*. at 41. Plaintiff further alleges that on September 30, 2013, Spinella "staged" an automobile accident in a parking lot and "wrote a false

---

[5] The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

report" stating that Plaintiff was responsible for the damages.  *Id*. at 48.  Spinella also "falsified" a document to the Department of Motor Vehicles.  *Id*.  On April 15, 2014, "somebody" broke into Plaintiff's garage and smashed the passenger side car door to correspond with Spinella's false reports.  *Id*. at 49.

Plaintiff also alleges Livingston failed to investigate her claims regarding "the laser holes" and property damage.  *Id*. at 56.

Plaintiff alleges that on May 26, 2013, she was "hit" in the face by a laser after filing eight "FOIL requests about the New Hartford Police Department."  *Id*. at 42-43.  Plaintiff took photographs of her face and showed them to Investigator Sica.  *Id*. at 43.  Thirty minutes later, he "showed up" at Plaintiff's house and "wrote a report about laser holes in my lawnmower tires, and other assorted property laser-damaged holes."  *Id*.  However, Plaintiff "never heard another word about the lasered holes and property damage."  *Id*. at 44.  Plaintiff also alleges that Sica "knows who put the hole in [her] face."  *Id*. at 45.

Plaintiff alleges that Francone issued Plaintiff five false traffic tickets in retaliation for filing this lawsuit.  *Id*. at 54.  Two days after filing the original Complaint, Plaintiff alleges that Francone "lied" and abused his power.  *Id*. at 57.

Here, Plaintiff has failed to plead plausible facts sufficient to state a § 1983 claim against Freiberger, Spinella, Sica, Livingston, or Francone.  The claims plead are nothing more than a failure to investigate and press criminal charges against others.  Because Plaintiff has already been given the opportunity to amend her complaint once (Dkt. No. 6), the Court recommends dismissal of the claims against Freiberger, Spinella, Sica, Livingston, and Francone without leave to amend.

### E. Claims Against Police Chief Inserra

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 67 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11–CV–1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22-23 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections . . . in a § 1983 claim") (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Therefore, "a plaintiff must . . . allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful

acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[6]

Here, Plaintiff's Second Amended Complaint is devoid of factual allegations that Police Chief Inserra directly participated in any of the alleged constitutional violations, and Plaintiff has failed to plead any facts to establish supervisory liability under *Colon*. Moreover, Police Chief Inserra cannot be held liable in his individual capacity under §1983 on a theory of supervisory liability given Plaintiff's failure to establish any underlying constitutional violation. *See Alston v. Bendheim*, 672 F. Supp. 2d 378, 388-89 (S.D.N.Y. 2009) (failure to state a claim for an underlying constitutional violation forecloses supervisory liability); *see also Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N .Y. 2011) (collecting cases for the proposition that "because Plaintiff has not established any underlying constitutional violation, she cannot state a claim for § 1983 supervisor liability").

Plaintiff has failed to plead plausible facts sufficient to state a § 1983 claim against Police Chief Inserra. Because Plaintiff has already been given the opportunity to amend her complaint once (Dkt. No. 6), the Court recommends dismissal of the claims against Police Chief Inserra without leave to amend.

### F.     Claims Against John and Jane Does, the Johnson Household, Gates Cole Insurance (Broker), and SAFECO INS.

Section 1983 "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia*

---

[6] The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability. *See Grullon*, 720 F.3d at 139.

*Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). "Section 1983 'is not itself

a source of substantive rights.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004)

(quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "It merely provides a method for

vindicating federal rights elsewhere conferred[.]" *Id*. In order to state a claim pursuant to §

1983, a plaintiff must allege "(1) 'that some person has deprived him of a federal right,' and (2)

'that the person who has deprived him of that right acted under color of state . . . law.'" *Velez v.*

*Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

With respect to the second requirement, to survive scrutiny under section 1915(e) where a

plaintiff has asserted a § 1983 claim, the complaint must allege facts that plausibly suggest state

action on the part of the named defendants. *See DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306,

311 (2d Cir. 1975), *modified on other grounds by DeMatteis v. Eastman Kodak Co.*, 520 F.2d

409 (2d Cir. 1975) ("A private party violates [section] 1983 only to the extent its conduct

involves state action."); *see also Wilson v. King*, No. 08–CV–0509 (GLS), 2008 WL 2096593, at

*1, 2008 U.S. Dist. LEXIS 39939, at *3-4 (N.D.N.Y. May 16, 2008).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its

reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins.*

*Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). A

plaintiff must therefore allege facts showing that a defendant was either a state actor or a private

party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d

Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen &*

*Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution

regulates only the Government, not private parties, a litigant claiming that his constitutional

rights have been violated must first establish that the challenged conduct constitutes 'state

action.'"). Private actors have been found to engage in "state action" when they are "willful participant[s] in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)).

In order to state a § 1983 conspiracy claim against a private actor, a plaintiff must do more than plead in conclusory fashion that a defendant "conspired" with a state actor. *Ciambriello*, 292 F.3d at 324; *see also Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (citations and internal quotation marks and punctuation omitted), *overruled on other grounds*, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). Instead, a plaintiff must allege facts showing: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324-25.

Here, even liberally construed, Plaintiff's Second Amended Complaint fails to allege any state action on behalf of these private parties. Moreover, Plaintiff's conclusory allegations that John and Jane Does, and the Johnson household, were "major actors" and were acting in concert with the FBI are inadequate to make a facially plausible showing that any of these Defendants conspired with the FBI to deprive Plaintiff of her constitutional rights. *See Dwares*, 985 F.2d at 100 (conclusory, vague, or general allegations of conspiracy to deprive plaintiff of his constitutional rights are properly dismissed).

Accordingly, Plaintiff has failed to plead plausible facts sufficient to state a § 1983 claim against John and Jane Does, the Johnson Household, Gates Cole Insurance (Broker), and SAFECO INS. Because Plaintiff has already been given the opportunity to amend her complaint once (Dkt. No. 6), the Court recommends dismissal of the claims against John and Jane Does, the Johnson Household, Gates Cole Insurance (Broker), and SAFECO INS. without leave to amend.

### G.     18 U.S.C. § 241

To the extent Plaintiff seeks to bring claims under 18 U.S.C. § 241, the Court lacks jurisdiction because this statute does not allow for a private civil action. *Ippolito v. Meisel,* 958 F. Supp. 155, 161 (S.D.N.Y.1997) (holding that there is no private right of action under 18 U.S.C. § 241).

### H.     Nature of Dismissal

Generally, when a *pro se* action is dismissed *sua sponte*, the plaintiff should be allowed to amend her complaint once before their complaint is dismissed. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999). Here, Plaintiff has already been given one opportunity to amend her complaint (Dkt. No. 6), and there is nothing in the Second Amended Complaint (Dkt. No. 34) suggesting that Plaintiff could do better given another opportunity. Therefore, the Court recommends that Plaintiff's Second Amended Complaint (Dkt. No. 34) be dismissed in its entirety without leave to amend for failure to state a claim under 28 U.S.C. § 1915(e).

### I.     State Law Claims

Plaintiff's Second Amended Complaint alleges numerous state law claims. (Dkt. No. 34.) A federal court may, in its discretion, exercise supplemental jurisdiction over a state law claim, but only to the extent it is accompanied by a claim over which the court has original jurisdiction. *See* 28 U.S.C. § 1367 ("[Except [in limited circumstances], in any civil action of

which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related[.]").

The Court has recommended that Plaintiff's federal claims be dismissed. The Court therefore also recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims, without prejudice to the re-filing of the claims in state court, and subject to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal without leave to amend. *See Kolari v. New York Presbyterian Hosp.*, 445 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed).

**WHEREFORE**, it is hereby

**RECOMMENDED** that the Second Amended Complaint (Dkt. No. 34) be **DISMISSED IN ITS ENTIRETY WITHOUT LEAVE TO AMEND** for failure to state a claim; and it is further

**RECOMMENDED** that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims without prejudice to the re-filing of the claims in state court, and subject to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal without leave to amend; and it is further

**ORDERED** that Plaintiff's letter request (Dkt. No. 35) seeking to amend the Second Amended Complaint is **DENIED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Order and Report-Recommendation, along with a copy of the unpublished decisions herein, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: February 29, 2016
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2007 WL 30100
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Blake WINGATE, Plaintiff,

v.

N.Y.C. Department of Correction
Commissioner HORN, et al., Defendants.

No. 05 Civ.2001 LTS HBP.
|
Jan. 4, 2007.

*MEMORANDUM OPINION AND ORDER*

SWAIN, J.

**\*1** Blake Wingate ("Wingate" or "Plaintiff"), an individual who alleges that he was at the times relevant to the subject matter of this complaint a pretrial detainee in the custody of the New York City Department of Corrections ("NYCDOC"), brings this action *pro se* pursuant to 42 U.S.C. § 1983. In his amended complaint, Plaintiff asserts principally that his constitutional rights have been violated in that, while incarcerated at Rikers Island in New York City pending trial on criminal charges, he was denied the right to vote in the November 2, 2004, general election. He challenges the lack of provisions for on-site Election Day voting at the Rikers Island facility. Plaintiff also alleges that his constitutional rights were violated when his efforts to file a grievance concerning the voting issue were rebuffed or delayed, and by a series of transfers among Rikers Island facilities that he claims was designed to frustrate his efforts to obtain a hearing on his grievances. Plaintiff further complains that New York State elections and corrections officials failed to respond to his letters concerning the voting arrangements at Rikers Island. With respect to his voting claim, Plaintiff seeks damages in the amount of $600 million, a mandate that in-person Election Day voting facilities be made available at Rikers Island for prisoners and staff, and related relief.

Named as defendants are: Martin Horn, the Commissioner of NYCDOC; Stanley Kreitman, the former Chair of the New York City Board of Correction ("NYCBOC"); numerous current and former New York City Board of Elections ("NYCBOE") Commissioners; NYCDOC

grievance coordinators Pauline Mimms and "Mr. Robinson"; Alan Croce, Chair of the New York State Commission of Correction ("NYSCOC"); and numerous Commissioners and other officials of the New York State Board of Elections ("NYSBOE"). [1] The Amended Complaint does not specify whether Plaintiff intends to sue these defendants in their individual capacities only, or in both their individual and official capacities. In light of his broad assertions in the body of the pleading of denials of voting and grievance rights by NYCDOC, NYCBOC and NYCBOE, and his request for structural as well as monetary relief, the Court construes Plaintiff's claims as asserted against the named defendants related to those entities in both capacities. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).

Three motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 are currently before the Court. The New York City-related defendants other than Mimms and Robinson [2] (the "City Defendants") seek dismissal of Plaintiff's voting-related claims, as well as his allegations regarding failure to respond to his complaint letters, for failure to state a claim, and also contend that his claims against the individual defendants should be dismissed for insufficient allegations of personal involvement in denying his requests to vote on Election Day and on grounds of qualified immunity. Defendant Croce, the NYSCOC, moves to dismiss the claims against him on grounds of lack of personal involvement and failure to state a claim; his motion also seeks dismissal of Plaintiff's claims on Eleventh Amendment grounds to the extent they are asserted against him in his official capacity. The NYSBOE defendants assert that they are entitled to dismissal on grounds of lack of personal involvement as well as qualified immunity, and because Plaintiff's voting-related claims are legally insufficient. Each motion was accompanied by the Notice to *Pro Se* Litigant required by S.D.N.Y. Local Civil Rule 56.2 and a statement of undisputed facts pursuant to S.D.N.Y. Local Civil Rule 56.1. Plaintiff filed and served three extensive sets of papers in response to the motions. [3] None of the movants filed reply papers.

**\*2** The Court has reviewed carefully the pleadings and all of the parties' arguments and submissions. For the following reasons, the City Defendants' motion is granted insofar as it seeks dismissal of the voting access-related aspects of the amended complaint, and is also granted insofar as it seeks dismissal of Plaintiff's claims relating to failure to act on his complaints about the voting issues. The motion

is denied insofar as it seeks dismissal of Plaintiff's claim against the NYCDOC commissioner relating to transfers among facilities following the filing of Plaintiff's NYCDOC grievance concerning the voting issue. The motions of NYSBOE defendants and defendant Croce are granted in their entirety.

*BACKGROUND*

The following material facts are undisputed, except to the extent specifically characterized below as allegations or assertions. Plaintiff Wingate, who currently resides at the Sing Sing correctional facility in Ossining, New York, was housed at the George Motchan Detention Center ("GMDC") on Rikers Island ("Rikers") on Election Day 2004. Plaintiff alleges that he entered NYCDOC custody as a pretrial detainee on October 20, 2005. (Pl. Opp. to NYSBOE, 2.) Plaintiff alleges that he sought an absentee ballot "by application" and that "they never ever responded to his letter, application." (*Id.,* 4.) It is undisputed that no on-site voting facilities were provided at Rikers on Election Day and that Plaintiff was unable to cast a vote on Election Day. Plaintiff alleges that he made specific requests to be allowed to vote on Election Day and that those requests were refused. (*E.g.,* Amended Complaint at 8. [4] )

NYCDOC provided for voting by eligible Rikers inmates in connection with the 2004 election as follows. Upon receipt of NYCBOE documentation specifying relevant election dates and generally applicable filing deadlines, Mashere Pride-Rawls ("Pride-Rawls"), NYCDOC's Executive Director of Special Events and Community Resources, issued a directive notifying the relevant officers of NYCDOC's department-wide policies affording inmates the opportunity to register and vote. [5] The NYCBOE information was incorporated into Inmate Voting Information posters that were placed in housing areas, law libraries, Inmate Grievance Offices, Chaplain Offices, Counseling Units and Program Areas, and on Program Carts. Voter registration and absentee ballot application forms were made available, on an ongoing basis, in English and three other languages. The deadlines and procedures applicable to the November 2004 general election were as follows. October 8, 2004, was the last date to register to vote. Absentee ballot applications were made available to inmates from October 11; such applications returned to NYCDOC by October 15 were to be delivered to the NYCBOE by NYCDOC. After October 15th and

through the NYCBOE's October 26th absentee ballot request deadline, inmates were required to mail their absentee ballot applications directly to the NYCBOE. Such mailings were designated as "legal mail" under NYCDOC policies and inmates were not charged for postage. The NYCBOE was to mail the absentee ballots directly to eligible inmates. Inmates were required to mail their completed absentee ballots to the NYCBOE by November 1, 2004. (Pride-Rawls Decl. and Exs. B-F thereto.)

**\*3** As noted above, Plaintiff alleges that he came into NYCDOC custody on October 20, 2004. That date was after the deadline for voter registration applications and prior to the October 26, 2004, deadline for mailing absentee ballot applications to the NYCBOE. He alleges that he applied for a ballot, but has proffered no evidence that he was registered to vote in the election, or that he completed and mailed the application in a timely fashion in accordance with the established procedures.

Plaintiff asserts, without proffering evidentiary support, that the "[New York City] Board [of Elections] did not send all the absentee ballots." (Pl.'s Opp. ("Response to City" portion) at 12 .) In addition, Plaintiff alleges that there are no "emergency" procedures in place for inmates who do not receive their requested absentee ballots by mail and that no one from NYCDOC's program office worked past nine in the morning on Election Day 2004 so that inmates had no one to turn to for assistance in the voting process. (Pl.'s Opp. ("Response to City" portion) at 12, 16.) Plaintiff alleges that, on Election Day, defendant Mimms refused to accept a grievance from him regarding the lack of provision for in-person voting at Rikers on that day, and that defendant Robinson thereafter delayed the processing of the grievance. (Am.Compl.8, 9, 12.)

Plaintiff further alleges that he was thereafter transferred among the various Rikers facilities to frustrate his attempt to pursue a NYCDOC administrative grievance on this issue. (Amended Complaint, "Facts" at 8-9, 12; *see also* Pl.'s Opp. ("Response to City" portion) at 2.) He alleges that "after filing the initial complaint [with] city and state agents" of the department of corrections, he "was transferred on a harassing scale" in the amount of eight times in less than one year, even though he has "no disciplinary record." ("Response to City" at 2 .) He alleges that "he has filed grievances in all of these facilities, never received a hearing, although he requested one, and upon transfer his claims at grievance were dismissed." (*Id.* at 2.) Plaintiff also alleges that the NYSBOE

defendants and defendant Croce failed to respond to two letters he wrote to them regarding the failure to provide for in-person voting at Rikers.

## DISCUSSION

Summary judgment shall be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the governing law,' " and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir.2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Second Circuit has explained that the "party against whom summary judgment is sought ... 'must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.' " Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir.2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration and emphasis in original). "[M]ere conclusory allegations, speculation or conjecture," will not provide a sufficient basis for a non-moving party to resist summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir.1996).

### Claim Relating to Voting Procedures

**\*4** The gravamen of Plaintiff's voting-related claim is his contention that the Constitution of the United States required the authorities to provide for in-person administration of voting for eligible inmates and others present at Rikers on Election Day 2004. The constitutional mandate is not, however, so categorical, and government officials' determinations as to voting procedures for eligible inmates are evaluated on a rational basis standard unless the record demonstrates that eligible prisoners are being precluded entirely from exercising their fundamental right to vote, in which case the restriction is subject to the compelling state interest test. See McDonald v. Bd. of Election Commrs., 394 U.S. 802, 806-10 (1969).

Thus, in O'Brien v. Skinner, 414 U.S. 524, 529-30 (1974), the Supreme Court struck down a New York election statute that denied pretrial detainees and misdemeanants access to absentee ballots when they were confined in the county of their residence but not otherwise. The Court held that the statute imposed " 'an unconstitutionally onerous burden on the ... exercise of the franchise' 'in that case because the potential voters in question were "denied any alternative means of casting their vote although they [we]re legally qualified to vote." Id. at 530 (citation omitted). By contrast, the Supreme Court had upheld a grant of summary judgment dismissing a complaint challenging similar absentee ballot restrictions in McDonald v. Bd. of Election Commrs., 394 U.S. 802 (1969). In McDonald, the Court found the higher standard inapplicable because, when "[f]aced ... with a constitutional question, [it could not] ... lightly assume, with nothing in the record to support the assumption, that [the state had] in fact precluded appellants from voting." McDonald, 394 U .S. at 808. In Goosby v. Osser, 409 U.S. 512 (1973), the Court held that the question of constitutionality of inmate voting restrictions was not precluded by McDonald, where the petitioners alleged that the scheme in question "absolutely prohibit[ed]" them from voting. Goosby, 409 U.S. at 521.

Neither Plaintiff's amended complaint nor any of his extensive papers in opposition to this motion is sufficient to raise an issue of material fact as to whether the Rikers Island voting procedures for the November 2004 election created an absolute barrier to his exercise of the fundamental right to vote. Plaintiff arrived at Rikers in time to have made a proper application for an absentee ballot, if he had already registered to vote in accordance with the generally applicable voter registration procedures. Plaintiff devotes two lines of his submissions to generalized allegations that he applied for an absentee ballot and did not receive one, but proffers no evidence that he properly and timely followed the available procedures nor even that he was a registered eligible voter in relation to the election in question. Instead, his papers are overwhelmingly devoted to arguments that the corrections and elections authorities would best serve the interests of exercise of the franchise by providing on-site voting and that the Constitution requires the provision of such voting facilities.

**\*5** Because the record is insufficient to support a conclusion by a reasonable fact finder that the Rikers procedures precluded Plaintiff from exercising his right to vote and because the record demonstrates that the extensive procedures for absentee voting, which are designed to comply with

state and local voting access requirements, clearly have a rational basis, Plaintiff's constitutional argument fails and the moving defendants are entitled to judgment as a matter of law dismissing his voting access-related claims in their entirety.

Plaintiff's arguments concerning the potential insufficiency of the Rikers procedures for individuals taken into custody after the absentee ballot application cutoff date, and his assertions that NYCDOC's efforts to encourage voting are not as effective as NYCDOC makes out, need not be addressed here, for it is clear that Plaintiff came into custody in time to be able to vote under the procedures and Plaintiff does not proffer any evidence that he was unaware of the absentee ballot voting opportunity or the deadlines relating thereto.

*Personal Involvement*

With the exception of Plaintiff's grievance-related transfer claim against the NYCDOC defendants (discussed below), which was not addressed in the motions, all of Plaintiff's claims against the moving Defendants in their personal capacities will be also dismissed because Plaintiff has failed to allege facts sufficient to frame a genuine issue for trial as to whether they were personally involved in deprivations of his constitutional rights.

Section 1983 of Title 42 of the United States Code provides a civil remedy for those claimants who are aggrieved by a person who, acting under the color of state law, deprives the claimant of rights secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes,* 13 F.3d at 519. As such, "the first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n. 3, (1979)). Under § 1983, liability may not be predicated upon a theory of respondeat superior. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d. Cir.1998). Therefore, to succeed on a section 1983 claim against an individual, a claimant must establish that the defendant was personally involved in the alleged deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1978); *cf. Thomas v. Ashcroft,* No. 04 Civ. 4001, 2006 WL 3423060, at *9 (2d Cir. Nov. 28, 2006) (discussing similar requirement for *Bivens*-type actions).

With respect to Plaintiff's voting access claims, Plaintiff does not allege that any of the moving Defendants was involved

in or aware of his efforts to obtain an absentee ballot, or indeed, of any effort on his part to vote prior to Election Day. Nor does he allege that any of them was personally involved in or aware at any relevant time of the refusal of NYCDOC representatives to permit him to vote on Election Day. For these reasons, and for the reasons explained above in connection with Plaintiff's voting access-related claims, Plaintiff has failed to raise any genuine issue of material fact as to whether any of the moving defendants was personally involved in a violation of his constitutionally-protected right to vote.

**\*6** With respect to Plaintiff's claims that individual defendants violated his constitutional rights by failing to respond to his complaint letters, the individual defendants are entitled to summary judgment. "An allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold an official liable for the alleged violations." *Bodie v. Morgenthau,* 342 F.Supp.2d 193, 203 (S.D.N.Y.2004) (quoting *Greenwaldt v. Coughlin,* No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995)). It is well-settled that failure to investigate alleged unconstitutional action does not state a claim under Section 1983. *See, e.g., Bodie,* 342 F.Supp.2d at 203 (noting that receipt of a prisoner's complaint and subsequent failure to respond to it will not trigger individual liability under Section 1983); *Pender v. United States,* No. 97 Civ. 6917, 2000 U.S. Dist. LEXIS 20916, at *13-14 (S.D.N.Y. Aug. 3, 2000) (noting that, even to the extent that allegations made about constitutional violations are true, failure to investigate official misconduct is not a constitutional violation). The only exception to this rule is when a failure to investigate the alleged official misconduct itself results in the alleged constitutional violation. *See Lewis v. Gallivan,* 315 F.Supp.2d 313, 317 (W.D.N.Y.2004). Here, the alleged constitutional violation was Plaintiff being deprived of his right to vote. Plaintiff's grievances regarding this alleged violation were filed after Election Day. As such, failure to investigate these grievances did not result in Plaintiff being deprived of his right to vote. Plaintiff's failure to proffer evidence sufficient to frame a genuine issue for trial with respect to the "failure to respond" claims entitles the individual defendants to summary judgment on this issue.

*Official-Capacity Claim Against Defendant Croce*

To the extent that Plaintiff can be understood to seek damages against defendant Croce in his official capacity, the Eleventh Amendment bars such a claim. "The general rule is that relief sought nominally against an officer is in fact against

the sovereign if the decree would operate against the latter." _Pennhurst State School and Hospital v. Halderman,_ 465 U.S. 89, 101 (1984). Any court order delineating the proper means of accommodating voting in prison settings would operate against the State of New York. Furthermore, Section 1983 has been held not to have abrogated states' sovereign immunity. _See Quern v. Jordan,_ 440 U.S. 332, 343 (1979). Lastly, New York has not consented to suits in federal court. _See Jones v. Nat'l Communication and Surveillance Networks,_ 409 F.Supp.2d 456, 467 (S.D.N.Y.2006) (noting New York State has not consented to suit in federal court). Accordingly, defendant Croce will be granted summary judgment in his official capacity.

_Additional Grievance-Related Transfer Claim_

**\*7** As noted above, Plaintiff's Amended Complaint includes allegations that he was subjected to a series of transfers among Rikers Island and other facilities following the filing of his voting-related grievance with NYCDOC, for the purpose of frustrating his efforts to pursue the grievance. He further alleges in his opposition papers to the instant motion that the transfers were made in retaliation for his exercise of a constitutional right. (Pl.'s Opp. 39.)

The City Defendants' motion papers do not address these allegations, which appear to be asserted against the NYCDOC officials, including defendants Mimms and Robinson, in their personal and official capacities. The motion thus fails to demonstrate that the NYCDOC defendants are entitled to judgment as a matter of law with respect to the transfer claim. Accordingly, the City Defendants' motion for summary judgment is denied to the extent it seeks dismissal of this claim.

_Other Pre-Trial Issues Raised in Plaintiff's Opposition Papers_

Plaintiff's various submissions in opposition to the instant motions include a number of assertions of rights to relief on issues apparently unrelated to those asserted in the complaint (see, _e.g.,_ Pl. NYSCOC Opp. at 3), as well as requests for discovery sanctions, conferences and injunctive relief. Plaintiff may, if he wishes to try to pursue these issues (as well as any issues relating to the status of service upon defendants Mimms and Robinson), raise them in further pretrial proceedings before Magistrate Judge Pitman, to whom this case continues to be referred for general pretrial management.

_CONCLUSION_

For the foregoing reasons, the City Defendants' motion is granted insofar as it seeks dismissal of the voting access-related aspects of the amended complaint, and is also granted insofar as it seeks dismissal of Plaintiff's claims relating to failure to act on his complaints about the voting issues. The motion is denied insofar as it seeks dismissal of Plaintiff's claim against the NYCDOC commissioner relating to transfers among facilities following the filing of Plaintiff's NYCDOC grievance concerning the voting issue. The motions of NYSBOE and defendant Croce are granted in their entirety. The reference of this matter to Magistrate Judge Pitman for general pretrial management purposes continues.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 30100

Footnotes

1    Plaintiff also asserted claims against certain commissioners and other officials of the Federal Election Commission; the federal defendants' motion for summary judgment dismissing the complaint as against them was granted in a Memorandum Opinion and Order entered on November 17, 2005.

2    The moving City Defendants assert that Mimms and Robinson were never properly served. (City Defs. Mem. of Law at 2, n. 2.) The Court notes that, on December 2, 2005, Magistrate Judge Pitman denied a request by Plaintiff for relief relating to service on Mimms and Robinson, apparently on the ground that the service issue had been mooted by the summary judgment motion.

3    Plaintiff's "Response to A.A.G. Motions," dated October 14, 2005 ("Pl. Opp. to NYCOC") (Docket item no. 71), principally responds to Commissioner Croce's motion; Plaintiff's submission titled "Summary Judgment Application State Board of Elections" ("Pl. Opp. to NYSBOE") (Docket item no. 70) principally responds to the NYSBOE's motion; a lengthy uncaptioned submission, received in chambers on November 1, 2005, and commencing with a table of contents ("Pl.'s

Opp.") (Docket item no. 72), has been docketed as "Plaintiff's Opposition to Summary Judgment Motions" and appears to be addressed to all of the motions.

4     The Amended Complaint was signed under penalty of perjury. (*Id.,* 15.)

5     Under N.Y. Election Law § 5-106, as administered by the NYCBOE, inmates are eligible to vote "if they are at least 18 years of age and a United States Citizen, awaiting trial or disposition of their criminal case, not serving time for a felony conviction and not currently on parole for a felony conviction." (Pride-Rawls Decl. ¶ 2.)

---

**End of Document**                             © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 3418382
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Richard SIPE, Plaintiff,

v.

David HARDER, et al., Defendants.

No. 9:08–CV–1365 (FJS/ATB).
|
Aug. 4, 2010.

**Attorneys and Law Firms**

Richard Sipe, pro se.

Aaron J. Marcus, Asst. Broome County Attorney, for
Defendants.

**REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

 **\*1** This matter has been referred to me for Report and
Recommendation by the Honorable Frederick J. Scullin, Jr.,
Senior United States District Judge, pursuant to 28 U.S.C. §
636(b) and Local Rules N.D.N .Y. 72.3(c). [1]

In this civil rights complaint, plaintiff alleges that on October
4, 2008, while he was incarcerated in the Broome County
Correctional Facility ("BCCF"), he was assaulted by another
inmate, while the housing unit officer watched. (Compl. at
2) [2] (Dkt. No. 1). Plaintiff also alleges that he was denied
his "constitutional right" to press charges against the inmate,
denied his right to file a grievance against another officer, and
suffered retaliation as a result of these actions. *Id.* Plaintiff
seeks substantial monetary relief. (Compl. at 6). Presently
before the court is defendants' motion for summary judgment
pursuant to Fed.R.Civ.P. 56. (Dkt. No. 43). Plaintiff has
responded in opposition to the motion, [3] and defendants have
filed a reply. (Dkt.Nos.47, 48).

This court agrees that defendants have met their burden
on summary judgment and finds that there is no genuine
issue of material fact for trial on any of plaintiff's claims.
Plaintiff has failed to exhaust his administrative remedies
as to all of the grounds raised in his complaint. None of

the defendants were responsible for the assault on plaintiff,
defendants Petryszyn [4] and Brown did not violate any of
plaintiff's constitutional rights, and defendant Kozina did not
deny plaintiff's request for medical care or retaliate against
plaintiff for the assertion of his constitutional rights. Thus, the
court will recommend that defendants' motion for summary
judgment be granted and the complaint dismissed in its
entirety.

**DISCUSSION**

**I.** *Facts*

**A. Plaintiff's Allegations**
Plaintiff alleges that on October 4, 2008, he was incarcerated
in B-pod [5] at BCCF. [6] (Compl. at 2). At approximately
9:30 p m ., plaintiff was assaulted by Fruquan Mable, [7]
another inmate at the jail. *Id.* Plaintiff claims that Corrections
Officer, Matt Rovente [8] allowed the assault to continue for
approximately twelve minutes. *Id.* Plaintiff claims that he was
"badly hurt," and he was "taken to medical," where he was
treated. *Id* . Plaintiff claims that he was later placed in punitive
housing for no reason, and that there were cameras that "saw
the whole thing." *Id.*

Plaintiff then states that on October 5th, he "stayed in
medical" because he was having headaches, he could not
sleep, and he was having panic attacks and bad dreams as a
result of the assault. (Compl. at 4). Plaintiff alleges that he
was in the medical unit for two days. *Id.* On October 7, 2008,
defendant Sergeant Petryszyn came to speak with plaintiff
about the assault, but plaintiff claims that defendant Petryszyn
refused to let plaintiff file criminal charges against the inmate
who assaulted him. *Id.* Plaintiff states that he is suing Sergeant
Petryszyn because it is plaintiff's constitutional right to file
criminal charges against another individual. *Id.*

 **\*2** Plaintiff states that he was moved to A–Pod on the
same day that he spoke with Sergeant Petryszyn. Plaintiff
claims that on October 8, 2008, he tried to file a grievance
against Sergeant Petryszyn, but that defendant Officer Billy
Brown would not let him do so because defendants Brown
and Petryszyn were friends. *Id.* Plaintiff states that he is suing
defendant Brown based on his failure to allow plaintiff to
file a grievance. *Id.* Plaintiff claims that defendant Officer
Larry Kozina denied plaintiff's request for medical care in
retaliation for "the trouble [plaintiff] stirred up" with his

grievances and due to his request to press charges against the other inmate. *Id.*

Very liberally interpreted, plaintiff's complaint appears to allege four claims. [9]

> (1) Defendant Harder is responsible for a "lack of security" that caused plaintiff to be assaulted by another inmate.

> (2) Defendant Petryszyn failed to allow plaintiff to "press criminal charges" against the inmate who assaulted him.

> (3) Defendant Brown denied plaintiff the right to file a grievance against Sergeant Petryszyn.

> (4) Defendant Kozina retaliated against plaintiff by denying his request for medical care and by treating him in a harsh and racist manner. [10]

## B. Defendants' Evidence

Along with counsel's affidavit and the required statement of material facts, defendants have each filed an affidavit in support of their summary judgment motion. (Dkt. No. 43–2, 43–5–43–8). Defendants have also filed the following in support of their motion:

> (1) The affidavits of Corrections Officers Joe Cornwell and Dave Creveling, two officers who responded to the October 4, 2008 incident involving plaintiff. (Dkt.Nos.43–3, 43–4).

> (2) The affidavit of Mark Smolinsky, the Jail Administrator of BCCF. (Dkt. No. 43–9).

Officer Rovente states that on October 4, 2008, he was working in B-pod, plaintiff's housing unit at BCCF. (Dkt. No. 43–8, Rovente Aff. ¶ 3). At approximately 9:35 p.m., he heard the door to cell 104 slam, and as he walked over to see what was happening, he noticed that inmate Mable was following plaintiff from the lower tier of cells. *Id.* ¶ 4. As Officer Rovente was watching, inmate Mable began to hit plaintiff. *Id.* Officer Rovente states that corrections officers are trained to handle such altercations by first notifying the control room of the fight in progress, referred to as calling a "code yellow." *Id.* ¶ 5 & 5(a). The "code yellow" involves informing the control room where the incident is taking place and how many inmates are involved. *Id.* ¶ 5(a).

Next, the officers are told to maintain unit security by ordering a "lock in" and by ordering the fighting inmates to stop. *Id.* ¶ 5(b). The officers are instructed not to become directly involved in the disturbance, but to remain at a "safe tactical distance." *Id.* ¶ 5(c). In fact, as the pod officer, Officer Rovente was not even allowed to assist in the restraining process after the other officers arrived. *Id.* ¶ 7. Officer Rovente states that when he saw inmate Mable hitting plaintiff, he immediately ordered inmate Mable to stop fighting and used his shoulder radio unit to call the "code yellow." *Id.* ¶ 8. Officer Rovente then went back to the "bubble" and called for the rest of the unit inmates to "lock in." *Id.* at ¶ 9. He did not try to physically stop the fight himself because, according to his training, he was required to wait until other officers arrived to assist. *Id.* ¶ 8.

**\*3** Officer Rovente states that at a certain point, inmate Mable stopped hitting plaintiff and returned to his cell, where he locked in. *Id.* ¶ 9. Officer Rovente then ordered plaintiff into the program room to wait for the other guards to arrive. When the other guards arrived, they took both inmates out of the pod. *Id.* ¶ 10. According to Officer Rovente, the entire incident lasted less than one minute, and although inmate Mable threw a lot of punches, it appeared that plaintiff was struck only three or four times because he was running away from inmate Mable and dodging the punches. *Id.* ¶ 11. Officer Rovente asserts that prior to this altercation, he was not aware of any tension or other problems between plaintiff and inmate Mable. *Id.* ¶ 12.

Officers Cornwell and Creveling were "rovers" on the evening of October 4, 2008. (Dkt. No. 43–3 & 43–4) (Cornwell Aff.; Creveling Aff.) A "zone rover" is an officer who monitors inmate movement through the corridors of the facility and assists and relieves housing officers when needed. (Cornwell Aff. ¶ 2; Creveling Aff. ¶ 2). Zone rovers also respond to emergency situations in the housing pods, including the "code yellow" calls. *Id.* Both officers state that at approximately 9:35 p.m. on October 4, 2008, a "code yellow" call was made regarding a fight in B-pod. (Cornwell Aff. ¶ 3; Creveling Aff. ¶ 3). Officer Cornwell states that he does not recall exactly how long it took him to respond, but that generally it takes him from a few seconds to about one minute, depending on where he is in the facility. (Cornwell Aff. ¶ 3). Officer Creveling also states that he does not remember how long it took him to respond, but it generally takes between one to two minutes, depending upon where he is in the facility. (Creveling Aff. ¶ 3).

Officers Cornwell and Creveling state that by the time they arrived at B-pod, both inmates had already been secured. (Cornwell Aff. ¶ 4; Creveling Aff. ¶ 4). When the officers arrived, they were directed to cell 102, where inmate Mable was already locked in. *Id.* Plaintiff was located in the program room. *Id.* Officer Cornwell secured inmate Mable, and Sergeant Jeff Katen and Officer Creveling escorted inmate Mable out of the pod. (Cornwell Aff. ¶ 5; Creveling Aff. ¶ 5). Sergeant Theresa Zenzel and Officer James McCombs took plaintiff out of B–Pod. (Cornwell Aff. ¶ 5). Officer Creveling states that he and Jeff Katan took inmate Mable to D–Pod, and while inmate Mable was being searched, he admitted to hitting plaintiff because plaintiff spit on the back of inmate Mable's head. (Creveling Aff. ¶ 6). Officers Cornwell and Creveling have attached copies of their respective incident reports as exhibits to their affidavits. [11] (Dkt. No. 43–15— Ex. C, Cornwell Report; Dkt. No. 43–16—Ex. D, Creveling Report). Officer Rovente's report states that plaintiff was seen by the medical staff after the incident for the injury to his mouth. (Dkt. No. 43–14, Ex. B).

**\*4** In his affidavit, defendant Petryszyn states that he investigated the altercation between plaintiff and inmate Mable. (Dkt. No. 43–7, Petryszyn Aff. ¶ 2). As part of the investigation, he reviewed a videotape of the incident, taken by the cameras positioned in the pod. *Id.* Defendant Petryszyn states that his review of the videotape revealed that inmate Mable did strike plaintiff "a few times," but that no more than a few seconds elapsed, as opposed to the ten or twelve minutes that plaintiff claims passed. *Id.* ¶ 3. Because of the "de minimis" nature of the event, the videotape was not retained beyond the normal thirty day holding period. *Id.* ¶ 4. No "Notice of Claim" or civil complaint was filed at the time that the recorder "rewrote itself." *Id.*

Defendant Petryszyn also states that Officer Rovente did not stand idly by, watching plaintiff's beating. *Id.* ¶ 5. Defendant Petryszyn confirms that when a disturbance takes place in the pod, the pod officer must call the "code yellow," maintain unit security and order a "lock in" of the rest of the inmates on the unit, and must not get physically involved in the altercation. *Id.* at ¶ 7. The reason for this final requirement is so that the pod officer can identify the inmates involved, observe and document all actions, and maintain the security of the rest of the unit by avoiding being ambushed or tricked. *Id.* Defendant Petryszyn determined that Officer Rovente handled the situation properly and in accordance with policy. *Id.* at ¶ 12. It took the "rovers" between thirty seconds and one minute to respond to the "code yellow" call. *Id.* ¶ 13.

Defendant Petryszyn states that he never refused to allow plaintiff to bring criminal charges against inmate Mable, although defendant Petryszyn does not remember plaintiff asking to do so. *Id.* ¶¶ 14–15. Defendant Petryszyn states that he does not have the power to restrict an inmate from pursuing the filing of criminal charges, and plaintiff could have notified the Broome County District Attorney's Office himself in order to request that charges be brought against inmate Mable. *Id.* ¶ 16.

Defendants have also "traditionally" filed plaintiff's medical records. [12] (Dkt. No. 43–25, Exs.L, M). In plaintiff's response to defendants' motion, he argued that the records provided by defendants were not complete, and that defendants refused to give plaintiff a list of witnesses to the event. (Dkt. No. 47 at 4). Defendants' reply includes excerpts from plaintiff's deposition. (Dkt. No. 48–1). Defendants have also included the medical records associated with medical visits from October 4 through 7, 2008. (Dkt. No. 48–2).

The progress notes from October 4th indicate that plaintiff was taken to the medical department after the fight. The nurse noticed that plaintiff's nose had bled, but the blood was "drying." *Id.* at 1. There was a small line of bruising seen on the left side of the nose, his eyes were tearful and reddened, and he complained of dizziness and blurred vision. *Id.* The nurse tested his eye sight, determined that he was alert and oriented, and performed a neurological check that produced results that were within normal limits. *Id.* The nurse did not notice any cuts or "open areas" outside of the bloody nose. *Id.* at 1.

**\*5** Because plaintiff complained of dizziness and chest pain, an EKG was performed. *Id.* at 1, 3. Although plaintiff complained of increased anxiety, his anxiety and heart rate decreased while he was being examined, and the EKG was normal. *Id.* at 1. After discussing potential cardiac issues, plaintiff was returned to the housing unit. *Id.* Plaintiff went to "emergency sick call" on October 5, 2008, complaining that he was having feelings of "harming self." *Id.* Plaintiff told the nurse that "he didn't do anything and they put me in D–Pod, so I came over here." *Id.* at 2. He denied suicidal intent, but he was kept in the medical unit. *Id.* His main complaint was that his nose hurt across the bridge, and he was having trouble blowing out of it. *Id.*

With their reply, defendants submitted the affidavit of Stephen A. Barlow, a Corrections Sergeant and Supervisor

of the Criminal Investigations Unit at BCCF. (Dkt. No. 48–4, Barlow Aff. ¶ 1). Sergeant Barlow interviewed Inmate Arthur Pellechia, who admitted being an eyewitness to the entire October 4, 2008 incident. *Id.* Inmate Pellechia, states that he saw the fight, which started in the Gallery. *Id.* Inmate Pellechia states that he saw plaintiff running away from Fruquan, and that plaintiff "took some punches," but that the "whole thing lasted about 5 mins." *Id.* "The officer called lock in when it started and called for help." *Id.*

## II. *Summary Judgment*

Defendants have moved for summary judgment, arguing that plaintiff has failed to exhaust his administrative remedies and has failed to raise any genuine issue of material fact regarding any of his substantive claims. This court finds that summary judgment should be granted in favor of all defendants, based both on plaintiff's failure to exhaust his administrative remedies and as to the merits of his claims.

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord,* 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

 **\*6** In considering a motion for summary judgment, the court does not resolve contested issues of fact, but must rather determine the existence of any disputed issues of material fact. *Salahuddin v. Coughlin,* 999 F.2d 526, 535 (2d Cir.1998) (citations omitted). In determining whether there is a genuine issue of material fact, a court must resolve ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Salahuddin v. Goord,* 467 F.3d at 272. To evaluate a fact's materiality, the substantive law determines which facts are critical and which are irrelevant. *Salahuddin v. Coughlin,* 999 F.2d at 535 (citing *Anderson v. Liberty Lobby,* 477 U.S. at 248). While the court must extend "extra consideration" to pro se parties, this does not relieve the pro se of his duty to meet the requirements necessary to defeat the motion. *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003). A pro se party's bald assertion, "completely unsupported by the evidence," is not sufficient to overcome a properly supported motion. *Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995) (quoting *Carey v.. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)).

## III. *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord,* 380 F.3d 670, 675–76 (2d Cir.2004). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675. The failure to exhaust is an affirmative defense that must be raised by the defendants. *Scott v. Del Signore,* 2005 U.S. Dist. LEXIS 6070, \*12–15 (W.D.N.Y. Feb. 18, 2005) (citing *inter alia Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004)). As an affirmative defense, it is the defendant's burden to establish that plaintiff failed to meet the exhaustion requirements. *Id.* at \*12–13 (citing *Giano,* 380 F.3d at 675).

In *Jones v. Bock,* 549 U.S. 199, 218 (2007), the Supreme Court held that in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Id.* (citing *Woodford v. Ngo,* 548 U.S. 81, 88 (2006)). In *Woodford,* the Court held that "proper" exhaustion means that the inmate must **complete** the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90–103.

Plaintiff was incarcerated in a County Facility, thus, the court must examine the grievance procedures applicable to

BCCF. Major Smolinsky's affidavit states that he is the Corrections Facility Administrator, and he promulgates and reviews the rules and regulations of jail procedure. (Dkt. No. 43–9, Smolinsky Aff. ¶ 2). Upon admission to the facility, all inmates are provided with an Inmate Handbook, which advises them as to the availability of grievance forms. *Id.* The forms were readily available so that inmates could file their grievances within five days of the act or occurrence giving rise to the grievance. *Id.* The handbook also provides the proper deadlines pursuant to New York Regulations. *Id.* (citing 9 N.Y.Code Rules & Regs. ("NYCRR") §§ 7032.4(i)-(k) and 7032.5). All inmates are provided access to the grievance program. *Id.* ¶ 6.

**\*7** Defendants have included a page of the handbook, containing the description of the inmate grievance procedure used at BCCF. (Dkt. No. 43–18, Ex. F). In order to resolve a grievance, the inmate must first attempt to get the issue resolved with the housing officer. *Id.* If no resolution is reached, plaintiff must file his grievance within five business days. *Id.* The initial grievance should be filed with defendant Brown, the Grievance Coordinator at BCCF. [13] (Dkt. No. 43–2, Brown Aff. ¶¶ 1, 3). The grievance is investigated, and plaintiff receives a written determination from defendant Brown within five days. *Id.* If plaintiff is not satisfied with the result, he may appeal to the Corrections Facility Administrator (Major Smolinsky). *Id.* If the inmate is not satisfied with this result, he must appeal within three days, and the grievance will be sent to the State Commission of Correction. *Id.*

The Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom,* 446 F.3d 305, 311–12 (2d Cir.2006) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir, 2004)). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.*

### A. Failure to Protect

Based on Major Smolinsky's affidavit and Exhibit F, it is clear that administrative remedies were available to plaintiff. [14] It is also clear that there is no record of plaintiff bringing an initial grievance regarding the failure to protect him from inmate Mable's assault, either against Officer Rovente, who

plaintiff has not named as a defendant, or against defendant Sheriff Harder, who was not personally involved in the incident, but upon whom the plaintiff apparently wishes to blame the assault. There is no claim that anyone prevented plaintiff from filing a grievance about the assault itself. Thus, the defendants would not be estopped from asserting this defense. Plaintiff has shown no special circumstances that would excuse his failure to grieve the alleged failure to protect plaintiff. Thus, plaintiff's first claim may be dismissed because he did not exhaust his administrative remedies.

### B. Failure to Allow Plaintiff to Press Criminal Charges and Right to File Grievances

Plaintiff second claim alleges that defendant Petryszyn refused to allow plaintiff to press criminal charges against inmate Mable. The grievance procedure was certainly available to plaintiff, but plaintiff did not file a grievance against defendant Petryszyn. For this claim, plaintiff alleges that he "filed or tried to file a grievance" against defendant Petryszyn, but defendant Brown "denied [his] grievance" because the defendants were "friends." Plaintiff alleges this as a separate claim against defendant Brown.

**\*8** Plaintiff appears to be alleging that defendant Brown somehow prevented plaintiff from filing a grievance against defendant Petryszyn. Since defendant Brown states in his affidavit that part of his job is to collect the initial grievances from inmates, (Brown Aff. ¶ 3), if he did prevent plaintiff from filing a grievance against defendant Petryszyn, plaintiff could argue that defendant Brown's conduct should estop him from asserting the lack of exhaustion as a defense.

However, even assuming that defendant Brown would not accept plaintiff's initial grievance against defendant Petryszyn, plaintiff was able to submit a complaint about both defendant Brown and defendant Petryszyn. On November 21, 2008 plaintiff wrote a letter to Major Smolinsky. [15] (Dkt. No. 43–21, Ex. I). In that letter, plaintiff stated that he wished to file a grievance regarding visitation, but that defendant Brown "stopped allowing me to file them." *Id.* Plaintiff claimed that the visitation was denied "in retaliation" for an unspecified lawsuit. [16] It is unclear from plaintiff's letter when defendant Brown allegedly stopped allowing plaintiff to file grievances. Plaintiff also included his claim that defendant Petryszyn refused to allow plaintiff to file criminal charges against inmate Mable and included a non-specific claim that his "medical care" was denied. *Id.*

In his affidavit, Major Smolinsky states that when he received plaintiff's Novmeber 2? letter, [17] he directed Lieutenant Hill to investigate the matter and respond. (Dkt. No. 43–9, ¶ 9). Lieutenant Hill investigated plaintiff's complaints and responded by memorandum dated December 4, 2008. (Dkt. No. 43–22, Ex. J). Lieutenant Hill's memorandum denied plaintiff's complaints. *Id.* The memorandum addresses and denies any staff wrongdoing regarding the visitation/retaliation claim, the claim against defendant Petryszyn, and defendant Brown, even though plaintiff's November 2? letter does not specify what grievances defendant Brown stopped plaintiff from filing. Lieutenant Hill's memorandum also cites all of the instances in which plaintiff was examined by medical personnel. *Id.* Plaintiff never attempted to appeal this determination to the Commission of Correction.

If plaintiff were following the grievance procedure as stated in the Inmate Handbook, the first level would have required a decision by defendant Brown. If defendant Brown were preventing plaintiff from filing grievances, an appeal to Major Smolinsky would have been the second level of review, and the final appeal would have been the Commission of Correction. Plaintiff bypassed [18] defendant Brown by writing to Major Smolinsky and Sheriff Harder, and although plaintiff received a decision from Lieutenant Hill on behalf of Major Smolinsky, plaintiff never appealed or even attempted to appeal Lieutenant Hill's findings. To the extent that plaintiff began the available administrative process, he never completed it. Therefore, he has failed to exhaust his administrative remedies as to both his claim against defendant Petryszyn and his claim against defendant Brown.

**\*9** In the alternative, as discussed below, even if the court were to assume that plaintiff exhausted his administrative remedies, neither claim rises to the level of a constitutional violation, and both claims may be dismissed on the merits.

## C. Retaliation

Plaintiff alleges that defendant Kozina "retaliated" against plaintiff for the "trouble" he "stirred up" by denying his "request for medical care. (Compl. at 4). Defendants have included two formal grievances filed by plaintiff; one filed on November 3, 2008 against Officer Kozina, claiming that defendant Kozina made plaintiff take his medication by threatening him with confinement if he refused to comply; and the second, filed on January 14, 2009, complaining about an unnamed officer who was very rude and who was shouting plaintiff's "legal business" in the open. (Dkt.Nos.43–19, 43–

23, Exs.G, K). Both grievances were addressed and denied at each level of the appeal process. *Id.*

However, the grievance that actually mentioned defendant Kozina did not allege that he refused plaintiff's request for medical care. In fact, plaintiff's grievance complaint against defendant Kozina was that he told plaintiff that he had to take his medications as directed or plaintiff would be locked in his cell. (Dkt. No. 43–19, Ex. G). Nowhere in the grievance does plaintiff claim that he requested medical care that he did not receive. [19] The grievance was filed on November 3, 2008, long after the October 4th incident, and before plaintiff signed or filed his federal complaint. *Id.* Thus, no claim of retaliation against defendant Kozina has been exhausted by plaintiff. In any event, as with plaintiff's other claims, his claim against defendant Kozina fails on the merits.

## IV. *Personal Involvement*

Defendants argue that defendant Harder, the Sheriff of Broome County, was not personally involved in any of the conduct alleged by plaintiff, and that plaintiff's claim that defendants failed to protect him from the attack of another inmate fails on the merits. Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citation omitted); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). In *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007) (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)).

**\*10** In this case, defendant Harder argues that plaintiff has failed to allege sufficient personal involvement to sustain a

constitutional claim against him. Plaintiff states that he named Sheriff Harder because of a lack of security at the facility that allegedly resulted in the assault by inmate Mable. Plaintiff does not allege that Sheriff Harder was personally responsible for any other conduct. Plaintiff's general statement that defendant Harder was responsible because of a "lack of security" alleges neither a policy or a custom of allowing such attacks, nor does he allege gross negligence in managing Officer Rovente.

Plaintiff was deposed in this action. The deposition focused on the danger from inmate Mable. In their reply brief, defendants have filed portions of plaintiff's deposition. (Dkt. No. 48–1). During his deposition, plaintiff testified that he had never had any misunderstandings with inmate Mable prior to the incident, but he then attempted to explain why he feared this inmate. (Dkt. No. 48–1 at 2). [20] Plaintiff was asked why he did not have inmate Mable on a "keep-apart list" prior to the incident, and plaintiff stated that he "did have, the day before the altercation ... I let the [corrections officers] know...." *Id.* Letting corrections officers know about a potential enemy the day before an altercation is insufficient to establish that somehow defendant Harder would be aware of the situation. Later in the deposition, plaintiff testified that prior to the altercation, he had no problem with inmate Mable. *Id.* at 4. Plaintiff stated that "[w]e were cool in the cell until he got the word." [21] *Id.*

Plaintiff was asked how Sheriff Harder was involved in the altercation or what happened prior to the altercation. *Id.* at 8. Plaintiff answered that Sheriff Harder was involved because plaintiff "wrote him" the day before the altercation. *Id.* There is absolutely no basis upon which to find that Sheriff Harder knew about any danger to plaintiff, particularly when plaintiff states he had no problem with inmate Mable prior to the incident, and he did not "alert" either the corrections officers or defendant Harder until the day before the incident. [22] In any event, the failure of a supervisory official to investigate a letter of protest written by an inmate is insufficient to establish personal involvement. *Smart v. Goord,* 441 F.Supp.2d 631, 642–643 (S.D.N.Y.2006). Thus, to the extent that plaintiff claims that Sheriff Harder should have done something to protect plaintiff from inmate Mable's assault itself, there is no personal involvement.

The court must interpret plaintiff's pro se complaint as raising the strongest argument that it suggests. *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Very liberally construed, the complaint can be read as including two failure to protect claims. One claim includes the failure to anticipate the risk of, and protect plaintiff from, assault by inmate Mable. The second claim would be that Officer Rovente watched the altercation without "helping" plaintiff. Plaintiff does not name Officer Rovente as a defendant. Because plaintiff was unaware of the proper protocol for responding to inmate altercations, he does not appear to be challenging the "policy" or the "protocol" which requires the housing officer to refrain from physically interfering in an inmate altercation and waiting for the "code yellow" back-up to arrive. However, if the court interprets the complaint as including a challenge to the "policy" or official "protocol" of the facility, and Sheriff Harder was involved in creating or enforcing that policy, then there could arguably be sufficient personal involvement by defendant Harder for that claim alone. The court does not have to make this determination, because regardless of personal involvement, plaintiff's failure to protect claims fail on the merits as discussed below.

## V. *Failure to Protect*

 **\*11** An inmate has a right under the Eighth and Fourteenth Amendments to be spared "the 'unnecessary and wanton infliction of pain.' " *Hendricks v. Coughlin,* 942 F.2d 109, 112 (2d Cir.1991) (citation omitted). An inmate's allegation that a defendant was deliberately indifferent in failing to protect him from the violence of other inmates states a claim under section 1983. *Id.* at 113.

In order to establish an Eighth Amendment claim for failure to protect, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, *and* prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan,* 511 U.S. 825, 836 (1994). The plaintiff must show that prison officials *actually knew of and disregarded* an excessive risk of harm to the inmate's health and safety. *Id.* at 837. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and the defendant must also draw that inference. *Id.*

An isolated omission by corrections officers generally does not support a claim for deliberate indifference, absent circumstances involving evil intent, recklessness, or deliberate indifference. *Coronado v. Goord,* 99 Civ. 1674, 2000 U.S. Dist. LEXIS 13876, \*10–11 (citing *Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir.1985)). Plaintiff may allege a constitutional claim by alleging that the substantial risk of inmate attacks was longstanding, pervasive, well-

documented, or expressly noted by prison officials in the past, and that the officials being sued were exposed to information concerning the risk and thus, must have known about it. *Id.* (citing *Farmer,* 511 U.S. at 842–43).

As stated above, even assuming that plaintiff wrote to Sheriff Harder the day before the incident, this bit of information is completely insufficient to establish that Sheriff Harder was aware of and disregarded a substantial risk to plaintiff. Thus, to the extent that plaintiff is attempting to raise a claim of failure to protect him from the assault itself against Sheriff Harder, [23] that claim may be dismissed.

Plaintiff's claim that Sheriff Harder was responsible for a lack of security in general would also not rise to the level of a constitutional claim. Such conclusory allegations are insufficient to state a claim under section 1983. *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987). Negligence is also not actionable under section 1983. *Daniels v. Williams,* 474 U.S. 327 (1986); *Davidson v. Cannon,* 474 U.S. 344 (1986).

Finally, to the extent that plaintiff's complaint may be read to challenge the policy or "protocol" that prevents the housing officer from becoming physically involved in an inmate altercation and requires him to wait for back-up to arrive, that claim also fails on the merits. It is well settled that the realities of running a penal institution are "complex and difficult," and the policies instituted by prison administrators are entitled to great deference by the court. *Washington v. Harper,* 494 U.S. 210, 223–24 (1990). The Supreme Court standard for evaluating any regulation that infringes upon an inmate's constitutional rights involves determining whether the regulation or policy is " 'reasonably related to legitimate penological interests.' " *Id.* (quoting *Turner v. Safely,* 482 U.S. 78, 89 (1987)). The standard applies even when the constitutional right allegedly infringed is fundamental. *Id.* (citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987)). In order to make this determination, the court must consider whether there is a vital connection between the policy and the legitimate governmental interest supporting the policy; the impact that any accommodation of the constitutional right will have on guards and other inmates, and on the allocation of prison resources in general; and the absence of ready alternatives. *Id.*

**\*12** In this case, although plaintiff believes that Officer Rovente failed to intervene in the fight to help plaintiff, the evidence submitted by defendants shows that Officer Rovente did exactly as he should have in the situation. It may have

appeared to plaintiff that Officer Rovente was standing by while plaintiff was being assaulted. As stated above, however, the officers have been trained not to become involved in an inmate altercation. They must wait for back-up to protect the security of the entire housing unit. Officer Rovente immediately called for back up, and within minutes, officers arrived. It may have seemed a long time to plaintiff, but in reality, only one or two minutes passed, and according to inmate Pellechia, the "whole thing" only lasted five minutes.

The policy articulated by defendants to explain Officer Rovente's actions is certainly related to legitimate penological interests. The security risk of the only officer on a housing unit becoming involved in an inmate altercation is substantial for the guard as well as the rest of the inmates in the unit. The "code yellow" is called, and the rovers arrive within seconds or minutes to assist in ending the disturbance. Although plaintiff may believe that this was not the proper procedure, the defendants have advanced a very legitimate security reason for the protocol followed by Officer Rovente, and plaintiff's substantive claims of failure to protect may be dismissed.

## VII. *Criminal Charges and Grievances*

### A. Defendant Petryszyn
The source of some frustration for plaintiff appears to be his belief that defendant Petryszyn refused to allow plaintiff to press criminal charges against inmate Mable. Plaintiff asserts that he has some constitutional right to press charges against another individual, and that this defendant prevented plaintiff from doing so. Although defendant Petryszyn denies refusing to ***allow*** plaintiff to press charges, stating that plaintiff could have always contacted the District Attorney himself, there simply is no constitutional right to press charges against another individual. *Marsh v. Kirschner,* 31 F.Supp.2d 79, 81 (D.Conn.1998) (citing *inter alia Leeke v. Timmerman,* 454 U.S. 83, 87 (1981) (per curiam); *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973)). *See also Bourguignon v. Lantz,* No. 3:05–CV–245, 2006 WL 214009, \*6–7 (D.Conn. Jan. 25, 2006) (citations omitted) (no right to compel the prosecution of criminal activity, and court dismissed plaintiffs' claims that defendants failed to press charges or failed to assist other inmates in pressing charges against inmates involved in an altercation). Thus, even if defendant Petryszyn had refused to allow or help plaintiff to press charges against inmate Mable, plaintiff's claim against defendant Petryszyn would have to be dismissed.

## B. Defendant Brown

Plaintiff alleges that defendant Brown refused to allow plaintiff to file a grievance against defendant Petryszyn, complaining about his failure to allow plaintiff to press criminal charges against inmate Mable. To the extent that this allegation could have excused a failure to exhaust, it is discussed above. The court also interprets plaintiff complaint as an attempt to bring a separate constitutional claim against defendant Brown for his alleged refusal to allow plaintiff to file an institutional grievance against his "friend" defendant Petryszyn.

**\*13** Courts have consistently held that because grievances procedures are undertaken voluntarily by the New York and other states, they are **not constitutionally required.** *See Ramos v. Hanslmaier,* 96 Civ. 744, 1997 U.S. Dist. LEXIS 6082, \*6–7 (S.D.N.Y. Feb. 19, 1997) (multiple citations omitted). *See also Bullock v. Horn,* CV–99–1402, 2000 U.S. Dist. LEXIS 21573, \*22–23 (M.D.Pa.2000) (plaintiff claimed improper refusal to process grievance); *Hoover v. Watson,* 886 F.Supp. 410, 418–19 (D.Del.), *aff'd,* 74 F.3d 1226 (3d Cir.1995); *Muhammad v. McMickens,* 86 Civ. 7376, 1988 U.S. Dist. LEXIS 552, \*8–9 (S.D.N.Y. Jan. 25, 1988). Because the grievance procedures are not constitutionally required, a violation of those procedures, or the failure to enforce them, does not give rise to a claim under section 1983. *Id.* Thus, plaintiff's claim against defendant Brown may be dismissed.

## VIII. *Retaliation*

Plaintiff's final claim is that defendant Kozina retaliated against plaintiff for the grievance and the "pressing charges ordeal" by subjecting plaintiff to "harsh and racist treatment." (Compl. at 4, 5). As stated above, plaintiff vaguely states that the alleged retaliation included some denial of medical treatment. Plaintiff's claims are completely conclusory and unsupported by any of the evidence.

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citing *Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002); *Hendricks v. Coughlin,* 114 F.3d 390 (2d Cir.1997)). The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506 (2002)). Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Bennett,* 343 F.3d at 137.

The Second Circuit has defined "adverse action" in the prison context, as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004) (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003), *superseded by* 2003 U.S.App. LEXIS 13030 (2d Cir. Feb. 10, 2003)) (omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

In this case, plaintiff alleges that defendant Kozina retaliated against plaintiff for the assertion of his right to have criminal charges filed against inmate Mable and his right to file a grievance against defendant Petryszyn. Even assuming that plaintiff has validly asserted that he engaged in constitutionally protected conduct, there is no indication that defendant Kozina took any "adverse" action against plaintiff or that any action taken by defendant Kozina was in any way related to the assertion of plaintiff's alleged constitutional rights.

**\*14** Plaintiff does not describe any instance in which defendant Kozina denied plaintiff's request for medical care. [24] In his complaint plaintiff states that he filed a grievance against defendant Kozina for this conduct. Thus, the court has examined the grievance filed by plaintiff against defendant Kozina in order to determine what plaintiff might be claiming. As stated above, the only grievance plaintiff filed against defendant Kozina involved defendant Kozina telling plaintiff to stop arguing with a nurse, who was telling plaintiff to take his medications as prescribed by medical personnel, and to stop disrupting the housing unit. Plaintiff does not describe what he means by "harsh and racist treatment," and this court cannot find that any such "treatment" would deter a similarly situated individual of ordinary firmness from exercising his constitutional rights. [25] Thus, this court will recommend dismissal of the conclusory claim of retaliation as to defendant Kozina.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for summary judgment (Dkt. No. 43) be **GRANTED,** and the complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

### All Citations

Not Reported in F.Supp.2d, 2010 WL 3418382

Footnotes

1   The case was originally referred to the Honorable Gustave J. Di Bianco and was assigned to me upon Judge Di Bianco's retirement on January 4, 2010. (Dkt. No. 41).

2   The court will cite to pages of the CM/ECF document because plaintiff has not numbered his pages and has inserted pages into the civil rights complaint form.

3   Although plaintiff has labeled this document a "motion," it is more appropriately considered a response in opposition to defendants' motion and has been filed as such. (Dkt. No. 47).

4   In the complaint, plaintiff misspelled this defendant's name "Petrician." (Dkt. No. 1). However, the court will refer to this defendant with the proper spelling, "Petryszyn." *See* (Dkt. No. 43–7) (Petryszyn Aff.).

5   A "pod" is a housing unit at the facility.

6   Plaintiff was incarcerated at BCCF from September 9, 2008, until February 3, 2009. (Dkt. No. 43–9, Smolinsky Aff. ¶ 4).

7   Plaintiff originally named Fruquan Mable as a defendant, but on January 6, 2009, Senior District Judge Scullin dismissed the complaint against defendant Marble because he did not act under color of state law as required to sustain a section 1983 action. (Dkt. No. 6 at 3). Although plaintiff continues to refer to Fruquan Mable as a defendant, he has been terminated from this action.

8   Plaintiff has not named Officer Rovente as a defendant in this case.

9   In determining the claims that plaintiff is attempting to raise, the defendants and the court have considered the entire complaint because plaintiff's "Causes of Action" do not all appear to actually state causes of action. Where a plaintiff is proceeding pro se, the court must interpret the pleadings liberally "to raise the strongest arguments they suggest." *Bussey v. Phillips,* 419 F.Supp.2d 569, 579 (S.D.N.Y.2006) (quoting *Graham v. Henderson* 89 F.3d 75, 79 (2d Cir.1996) (internal quotation marks omitted)).

10  The court notes that in plaintiff's response to defendants' summary judgment motion plaintiff lists his "causes of action" as defendants have interpreted them, but plaintiff includes an additional statement in his fourth cause of action relating to a "denial of the right to practice his religion." (Dkt. No. 47, ¶ 9). Plaintiff then states that "[w]hen [the] complaint was received by defendants, Retaliation was placed on plaintiff by locking him in F pod with no heat, no hot water, denial of medical care, and refusal to allow plaintiff to practice his religion of Islam." (Dkt. No. 47, ¶ 11). He also states that "[p]laintiff was placed in F pod in retaliation for "suit." (Dkt. No. 47, ¶ 20). Plaintiff appears to be attempting to state that after the defendants received the ***federal complaint,*** "they" did all these things to plaintiff. Nowhere in the complaint are any facts that support these final allegations, and it appears that they relate to actions that some unknown individuals committed after the federal complaint was filed. Plaintiff has not moved to supplement his complaint. Thus, the court will not consider any of these last allegations.

11  Defendants have also included a copy of Officer McCombs's report. (Dkt. No. 43–17—Ex. E, McCombs Report).

12  Exhibit 25, filed electronically, is simply defense counsel's letter, requesting that he be allowed to file the medical records "traditionally." (Dkt. No. 43–25). The court has been provided hard copies of the medical records for its review.

13  Defendant Brown states that as part of his duties as the Grievance Coordinator, he tours the facility daily, Monday through Friday, discussing facility issues with inmates and accepting their grievances, if any. (Dkt. No. 43–2, Brown Aff. ¶ 3). Defendant Brown states that he knows plaintiff, has spoken to him on various occasions, and has received two grievances from him. *Id.* ¶ 4.

14  It is clear that plaintiff had the Inmate Handbook, since his November 21, 2008 letter to Major Smolinsky cites the Inmate Hanbook and "NYS Minimum Standards" as support for plaintiff's alleged right to visitation. (Dkt. No. 43–21, Defs.Ex. I).

15  Plaintiff wrote substantially the same letter to Sheriff Harder. (Dkt. No. 43–20, Ex. H).

16   Plaintiff may be referring to this action because his complaint is signed was November 12, 2008, and the letters defendant Harder and Major Smolinsky were written on November 21, 2008, it is unlikely that any of the defendants were aware of plaintiff's lawsuit because it was not received in the Northern District until December 22, 2008, notice of the action was not sent to Sheriff Harder until January 16, 2009, and the case was not served on defendants until March of 2009. The acknowledgments of service were not returned until July of 2009. (Dkt.Nos.31–34).

17   Major Smolinsky received plaintiff's letter on December 1, 2008. (Dkt. No. 43–9, ¶ 9).

18   Generally, bypassing the first step of the grievance process would not be considered properly exhausting the grievance process. *Jones v. Bock, supra.* However, if defendant Brown had really been preventing plaintiff from filing grievances, plaintiff's letter to Major Smolinsky (and Sheriff Harder) would have been the appropriate step to take.

19   The court notes that the grievance was investigated. The investigation showed that plaintiff wanted to take medications "his way," not as prescribed by the doctor. (Dkt. No. 43–19, Ex. G at 3–4). Defendant Kozina only got involved because plaintiff was having an argument with the nurse and was beginning to disrupt the housing unit. *Id.* at 4. The nurse was interviewed as part of the investigation. Defendant Kozina told plaintiff to stop arguing "or be locked in." *Id.* The investigation also showed that defendant Kozina declined to look at pictures of plaintiff's children, and plaintiff took offense. *Id.* Lieutenant Hill wrote plaintiff a memorandum explaining the results of the investigation and denying the grievance. *Id.* Plaintiff appealed to the Commission of Correction, and his appeal was denied January 21, 2009.

20   Defendants did not submit a copy of the entire deposition, thus, the pages of the transcript are not consecutive. The court will cite to the CM/ECF page of the document.

21   During the deposition, plaintiff testified that inmate Mable had a "contract" out on plaintiff, due to another inmate, who was on plaintiff's "keep-apart" list. (Dkt. No. 48–1 at 2). "[T]hat's why I was assaulted." *Id.* Plaintiff also testified that he put inmate Mable on plaintiff's "keep-apart" list "the day before the altercation" because he "felt bad vibes ...." *Id.*

22   The only letter to Sheriff Harder from plaintiff in the record is the letter, filed by defendants, dated November 21, 2008 (after the October 4th incident) that is substantially identical to the letter plaintiff wrote to Major Smolinsky. (Dkt. No 43– 20). The claims made in that letter were investigated by Lieutenant Hill.

23   A claim against Sheriff Harder or any of the other defendants in their "official capacities," would be a suit against the municipality by which the individual is employed. A section 1983 action against municipal officers in their official capacity is treated as an action against the municipality itself. *Coon v. Town of Springfield,* 404 F.3d 683, 687 (2d Cir.2005) (citing *Brandon v. Holt,* 469 U.S. 464, 471–73 (1985)). In order to state a claim against Broome County, plaintiff would have to show that the allegedly unconstitutional conduct resulted from a "policy" or "custom" of the municipality. *Anthony v. City of New York,* 339 F.3d 129, 139 (2d Cir.2003). Since the case fails against the individual defendants for lack of a constitutional violation, any claim against the municipality would also be dismissed. This court has also discussed plaintiff's complaint as it could be interpreted to allege a challenge to a policy, and finds that the complaint should be dismissed either as against the defendants in their individual or "official" capacities.

24   In response to plaintiff's claim that he has been denied medical care, defendants have submitted plaintiff's medical records for this court's review. (Dkt. No. 43, Exs.L, M). In his response to defendants' motion, plaintiff still makes vague claims regarding his medical care, but he does not relate this allegations to any existing defendant. As stated above, any attempt that plaintiff makes to include new issues regarding religion or any other claims will not be considered.

25   *See, e.g, Davis v. Goord,* 320 F.3d at 353 (insulting, disrespectful, sarcastic, or hostile comments directed at an inmate generally do not rise to the level of adverse action) (citing *inter alia, Dawes v. Walker,* 239 F.3d at 492 (calling inmate a "rat" not a constitutional violation).

---

**End of Document**        © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

**Attorneys and Law Firms**

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

### *MEMORANDUM DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

***1** Currently before the Court, in this *pro se* civil rights
action filed by Kenneth Carl Groves, Sr. ("Plaintiff"), against
numerous employees of New York State or the Central
New York Psychiatric Center ("Defendants"), are Plaintiff's
motion to proceed *in forma pauperis,* his motion for a
temporary restraining order and preliminary injunction, and
his motion for appointment of counsel. (Dkt.Nos.2, 3, 4.) [1]
For the reasons set forth below, Plaintiff's motion to proceed
*in forma pauperis* is granted; his motion for a preliminary
injunction is denied; his motion for appointment of counsel
is denied; Plaintiff's claims of deliberate indifference to his
mental health needs against Defendants Bill, Carver and
DeBroize are *sua sponte* dismissed with prejudice; Plaintiff's
claims against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, and Hogan arising from their alleged personal
involvement in the August 8, 2011 assault are *sua sponte*
dismissed without prejudice and with leave to amend in this

action in accordance with Fed.R.Civ.P. 15; Sgt. Sweet is *sua
sponte* dismissed without prejudice as a Defendant in this
action; the Clerk is directed to issue summonses, and the U.S.
Marshal is directed to effect service of process on Defendants
Davis, Sill, and Nicolette.

### I. RELEVANT BACKGROUND

On November 7, 2011, Plaintiff commenced this action
*pro se* by filing a civil rights Complaint, together with a
motion to proceed *in forma pauperis.* (Dkt. Nos.1, 2.) [2]
Liberally construed, Plaintiff's Complaint alleges that the
following constitutional violations against him occurred
during his confinement at Central New York Psychiatric
Center ("CNYPC"): (1) Defendants Davis and Sill used
excessive force against him under the Eighth and/or
Fourteenth Amendments; (2) Defendant Nicolette knew of
and failed to take action to protect Plaintiff from the
assault under the Eighth and/or Fourteenth Amendments;
(3) Defendants Bill, Carver, and DeBroize were deliberately
indifferent to his mental health needs under the Eighth and/
or Fourteenth Amendments; and (4) Defendants Bill, Carver,
DeBroize, Nowicki, Maxymillian, Bosco, and Hogan failed to
"adequately train the staff under their supervision" and to take
appropriate action in response to the incident. (*See generally*
Dkt. No. 1.) For a more detailed description of Plaintiff's
claims, and the factual allegations giving rise to those claims,
the reader is referred to Part III.B of this Decision and Order.

### II. MOTION TO PROCEED *IN FORMA PAUPERIS*
Because Plaintiff sets forth sufficient economic need, the
Court finds that Plaintiff may properly commence this action
*in forma pauperis.* (Dkt. No. 2.)

### III. *SUA SPONTE* REVIEW OF PLAINTIFF'S
COMPLAINT
In light of the foregoing, the Court must now review the
sufficiency of the allegations that Plaintiff has set forth in
his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is
because Section 1915(e)(2)(B) directs that, when a plaintiff
seeks to proceed *in forma pauperis,* "(2) ... the court shall
dismiss the case at any time if the court determines that—...
(B) the action ... (i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from such relief."
28 U.S.C. § 1915(e)(2)(B). [3]

## A. Governing Legal Standard

**\*2** It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft*

*v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [5] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted]. [6]

**B. Analysis of Plaintiff's Complaint**

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners." *Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions." *Youngberg,* 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard." *Groves v. Patterson,* 09–CV–1002,

Memorandum–Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009). [7]

**1. Excessive Force Claims Against Defendants Davis, Still and Nicolette**

**\*4** Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]." (*Id.*) As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff." (*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the

assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

## 2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated." (*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.) The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

**\*5** To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently

serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).). [8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06; *Chance,* 143 F.3d at 703. [9]

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and

Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading. [10] Rather, this claim is hereby dismissed with prejudice.

### 3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. [11]

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997). [12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb.4, 2011). [13]

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold." (Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.) Plaintiff does

not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court—to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

**\*7** Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and in the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

### IV. MOTION FOR INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an

opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at *3 (W.D.N.Y. Mar.10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction. *Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at *2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at *2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

 **\*8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order." (Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an

"Order of Separation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill, Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.) Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

## V. MOTION FOR APPOINTMENT OF COUNSEL

 **\*9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent

party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case. [14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

**\*10 ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;** [15] and it is further

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED** without prejudice; and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte* **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte* **DISMISSED** **without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte* **DISMISSED without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis, Sill and Nicolette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

**Footnotes**

1   This is the fourth civil rights action filed by Plaintiff in this District. Generally, two of these actions arose out of Plaintiff's refusal to consent to a strip search and the subsequent actions taken against Plaintiff as a result of his refusal. *See Groves v. New York,* 09–CV–0406, Decision and Order (N.D.N.Y. filed May 11, 2009) (Hurd, J.) (*sua sponte* dismissing complaint pursuant to 28 U.S.C. § 1915[e][2][B] ); *Groves v. The State of New York,* 9:09–CV–0412, Decision and Order (N.D.N.Y. filed Mar. 26, 2010) (Sharpe, J.) (granting defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12[b][6] ). The third action alleged numerous violations of Plaintiff's constitutional rights during the period July 23, 2009, and August 26, 2009, and was dismissed without prejudice upon Plaintiff's request in October, 2010. *See Groves v. Maxymillian,* 9:09–CV–1002, Decision and Order (N.D.N.Y. filed Oct. 8, 2010) (Suddaby, J.). As a result, it does not appear that the current action is barred because of res judicata, collateral estoppel, and/or the rule against duplicative litigation.

2   At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

3   The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

4   *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

5   *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

6   It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a) (2). *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must

still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

7    *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ––––8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

8    Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

9    Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

10   The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994). *John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

11   *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

12   *See also Gillard v. Rosati,* 08–CV–1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability." [internal quotation marks and brackets omitted] ); *Greenwald v. Coughlin,* 93–CV–6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin,* 92–CV 0920, 1993 WL 205111, at *5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

13   *See also Bernstein v. N.Y.,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials." [internal quotation marks, brackets and ellipsis omitted] ).

14   For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

15    Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

**End of Document**                                  © 2016 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

**Distinguished by** Bektic-Marrero v. Goldberg, S.D.N.Y., March 7, 2012

2008 WL 2096593
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Richard WILSON, Plaintiff,

v.

Sgt. KING; C.O. John Doe # 1; C.O. John Doe
# 2; Dr. E. Weissman; Dr. Ellis; Dr. Michael
Aronis; P.A. Tichenor; Nurse Travers, Defendants.

No. 9:08-CV-0509 (GLS).
|
May 16, 2008.

**Attorneys and Law Firms**

Richard Wilson, pro se.

**MEMORANDUM-DECISION and ORDER**

GARY L. SHARPE, District Judge.

**I. Background**

 **\*1** Presently before this Court is a civil rights complaint filed by Richard Wilson. Wilson has also filed an application for leave to proceed with this action *in forma pauperis.*

In his *pro se* complaint, Wilson asserts claims arising out of his confinement at Upstate Correctional Facility. [1] Wilson claims that defendants failed to protect him from a known risk of injury by his cellmate, who assaulted Wilson on May 27, 2005. Dkt. No. 1 at 3-5. Wilson further claims that he was denied medical care for the serious injuries suffered in the assault, and was later found unconscious and unresponsive in his cell. *Id.* at 7. Following surgery on his ruptured spleen, Wilson remained hospitalized for eleven days. *Id.* at 8-9. Wilson claims that defendants acted with deliberate indifference to his serious medical condition upon his return to Upstate Correctional Facility. Also included in the complaint is a claim that defendant Michael Aronis, MD, the surgeon at Alice Hyde Medical Center, rendered substandard care and committed several errors in the course of

the surgery. *Id.* For a complete statement of Wilson's claims, reference is made to the complaint.

**II. Discussion**

**(A)** *In forma pauperis* **application**
Based upon a review of Wilson's *in forma pauperis* application, the Court finds that he has demonstrated sufficient economic need.

**(B) The sufficiency of the complaint**
Since the Court has found that Wilson meets the financial criteria for commencing this case *in forma pauperis,* the Court must consider the sufficiency of the complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that when a plaintiff seeks to proceed *in forma pauperis,* the Court:

> (2) [S]hall dismiss the case at any time if the Court determines that-
>
> * * *
>
> (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B). Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis,* it is the Court's responsibility to determine that a complaint may properly be maintained in the District before it may permit the plaintiff to proceed with his or her action *in forma pauperis.*

In this case, Wilson asserts several claims for the alleged violation of his constitutional rights pursuant to 42 U.S.C. § 1983. Parties may not be held liable under this section unless it can be established that they have acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3d 625, 628 (2d Cir.1994); *Wise v. Battistoni,* No. 92-CV-4288, 1992 WL 380914 (S.D.N .Y. Dec. 10, 1992). It is the duty of the plaintiff to allege state action on the part of each defendant named in a complaint, and a court may dismiss an action under 28 U.S.C. § 1915(e) against a defendant where the plaintiff fails to plead such a nexus. *See, e .g., Carollo-Gardner v. Diners Club,* 628 F.Supp. 1253, 1256-57 (E.D .N.Y.1986); *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 311 (2d Cir.), *modified on other grounds,* 520 F.2d 409 (2d Cir.1975 .).

**\*2** Plaintiff has named Dr. Michael Aronis as a defendant in this action. Dr. Aronis is identified as the surgeon who operated on plaintiff in May, 2005 at Alice Hyde Medical Center. Plaintiff has not alleged any nexus between the State of New York and this individual, nor does it appear that Alice Hyde Medical Center is a "state actor" for purposes of § 1983. See *Schlein v. Milford Hospital,* 561 F.2d 427 (2d Cir.1977) (private hospital, while regulated by the state, may not be sued as a state actor under 42 U.S.C. § 1983).

Since Wilson's complaint, which is brought pursuant to 42 U.S.C. § 1983, does not allege any state action on the part of this defendant, Michael Aronis is dismissed as a defendant in this action .² 

WHEREFORE, it is hereby

ORDERED, that Wilson's *in forma pauperis* application (Dkt. No. 2) is granted. The Clerk of the Court shall provide the superintendent of the facility, designated by Wilson as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that Wilson is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915, and it is further

ORDERED, that "Dr. Michael Aronis" is dismissed as a defendant in this action, and it is further

ORDERED, that the Clerk issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summons and complaint to the Office of the New York State Attorney General, together with a copy of this Order, and it is further

ORDERED, that a response to the complaint be filed by the defendants or their counsel as provided for in the Federal Rules of Civil Procedure after service of process on the defendants, and it is further

ORDERED, that Wilson take reasonable steps to ascertain the identity of the "John Doe" defendants referred to in the complaint, and it is further

ORDERED, that the Clerk provide a copy of Wilson's authorization form to the Financial Deputy of the Clerk's Office, and it is further

ORDERED, that *any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Wilson must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. *Wilson is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action,* and it is further

ORDERED, that the Clerk serve a copy of this Order on Wilson by regular mail.

**\*3** IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 2096593

---

Footnotes

1    Wilson is presently incarcerated at Wyoming Correctional Facility. Dkt. No. 1 at 1.
2    To the extent Wilson seeks to assert state law medical malpractice claims against Dr. Aronis, it does appear that the Court has subject matter jurisdiction over such claims. See 28 U.S.C. § 1332(a).

---

    © 2016 Thomson Reuters. No claim to original U.S. Government Works.